WILL OF COSGROVE : McDERMOTT and others, Appellants, vs. LUMBERMEN'S NATIONAL BANK OF CHIPPEWA FALLS, Trustee, Respondent.

*December 5, 1940—January 7, 1941.*

556

For the appellants there was a brief by *Paul Megan* of Wausau, and *Eberlein & Eberlein* of Shawano, and oral argument by *Mr. M. G. Eberlein* and *Mr. Megan*.

For the respondent there was a brief by *Stafford & Stafford* of Chippewa Falls, attorneys, and *Briggs, Gilbert & Macartney* of St. Paul, Minnesota, of counsel, and oral argument by *Harold E. Stafford* and *Charles W. Briggs*.

FOWLER, J. The appeal is from an order of the county court denying a petition to set aside an order approving the account of the defendant bank as a testamentary trustee, distributing the trust fund, and discharging the bank as trustee. The order attacked was entered May 4, 1937, and a final discharge pursuant to the order was dated June 29, 1937. The petition was filed December 22, 1939. The petition is grounded on alleged fraud practiced upon the court. The petition details the proceedings had in the county court and alleges generally that a "great fraud has been perpetrated upon the court and upon these petitioners." Counsel for the appellants acknowledge that their only valid basis of attack is that a fraud was practiced upon the court in procuring it. They accept *Estate of Penney,* 225 Wis. 455, 274 N. W. 247, as stating the rule applicable. That case leaves nothing further to be said respecting that rule. The petition does not specify what particulars it relies on as constituting the fraud upon the court, but the case has been tried and if the evidence before the court without objection shows any concealment of fact that should have been brought before the court on the hearing of the bank's petition that can properly be considered as constituting a fraud upon the court, the order should be reversed. *Duffy v. Scott,* 235 Wis. 142, 292 N. W. 273.

The plaintiffs are the residuary legatees of Margaret McDermott, a sister of the testator, Patrick Cosgrove, who by his will created a trust of which Margaret was the beneficiary. The income was to be paid to her during her life and at her death the trust fund was to go according to her will. By her will Margaret devised to one of her sons a farm on which she had executed a mortgage securing a $2,070 note running to the testator, left some other specific legacies to others, and left the residue to her seven children, all adults at the time of her death. The residue consists of what is left of the trust funds after payment therefrom of the specific legacies.

The executor of the will that created the trust turned the trust funds over to the defendant bank which was empowered to act as a testamentary trustee, and which had been appointed trustee of the McDermott trust fund by the county court on the settlement of the executor's account.

The will directed the testator's estate to be divided into six hundred fifty-five shares. It gave a specified number of shares to each of several persons. To his sister Margaret McDermott he gave one hundred of these shares, and directed his executors to "establish a trust fund with the proceeds of said shares and pay the income derived from said trust fund to [her] as long as she may live and at her death the principal of said trust fund shall be distributed as [she] may will."

The order of the court appointing the bank as trustee, is dated June 4, 1923, and recites that a trust was created by the will, that the executors refused to act as trustees, that the bank was authorized by law "to accept said trust and to act as trustee herein, without bond and is willing to pay five per cent per annum income on said trust fund payable quarterly and the court having by an order of judgment . . . assigned to said trust fund the sum of $23,526.04 and an indebtedness of $2,070 due the estate . . . from said Margaret Jane McDermott; therefore it is ordered that [the

bank] be and hereby is appointed trustee of said trust;" and the order expressly directed the bank to "hold and administer the same in trust as aforesaid for the use and benefit of said Margaret Jane McDermott during the term of her natural life, paying her as income on the said sum of $23,526.04 at the rate of five per cent per annum payable quarterly . . . and that at her decease said bank pay over and transfer *said* sum of money . . . to such persons as she may will."

Letters of trust dated June 4, 1923, were granted to the bank. The letters followed the order above quoted and specifically directed the bank "to pay and deliver to the person entitled thereto said money, indebtedness and security at the expiration of said trust." The "money" above referred to was the $23,526.04 and the "indebtedness and security" was the $2,070 note and mortgage of Margaret to the testator.

It appears that the bank never filed with the court any account or reported any inventory of trust property to the court until two years after the death of Margaret. It then filed an account reporting two mortgages and notes which they secured on one of which, referred to as the Schaal mortgage, $13,500 principal and interest of $2,289.32 was due and unpaid, and the other, referred to as the Cheaters mortgage, on which was due $3,206 principal and $897 interest, which were therein inventoried, as constituting with other items named in the trust fund to be turned over to the heirs of Margaret. The heirs all lived in Canada except one who lived in California. Margaret died in 1935. In March, 1937, the bank petitioned the court for settlement of its account as trustee.

The court directed service of notice of hearing of the petition by mail on the heirs. The notices were mailed. None of the heirs appeared at the hearing. The court entered its order approving the account. By this order the court in effect adjudged that the bank invested a portion of the trust fund in the two mortgages referred to; that these mortgages consti-

tuted a part of the principal of the trust; that the amount of the mortgage notes did not at any time exceed fifty per cent of the value of the mortgaged land; and assigned to each of the residuary legatees an undivided part of the said notes and mortgages. The order further provided that on the trustee's filing vouchers showing compliance with the judgment, an order should be entered without further notice discharging the trustee.

It is to be noted that the bank violated its duties as trustee in several particulars. It filed no inventory of the trust property as required by sec. 312.03, Stats.; filed no annual accounts as required by sec. 323.01, Stats.; produced no securities before the court for examination as required by sec. 323.07, Stats.; failed to keep the trust account separate from its general books of account, and to keep the trust funds so separate and to take the trust securities in its name as trustee, as required by sec. 223.05, Stats. The Cheaters and Schaal notes and mortgages both ran to the bank in its own name, and are stated in a declaration found in the bank files to have been assigned by it to the trust, but no approval by the court was procured by the bank to such assignment as sec. 223.03 (10), Stats., requires must be done by state banks acting as testamentary trustees in selling its own securities to a trust it is administering. More than one half of the trust fund was invested in the Schaal mortgage in violation of sec. 320.02 (3), Stats., par. (c) 2100$b$, 2, Stats. 1923. While the finding of the county judge that the land covered by mortgages was worth at least twice the amount of the mortgages would have to be sustained, on this assumption the investment in the Schaal mortgage constituted more than thirty per cent of the trust fund and that mortgage would have had to be excluded from the trust property had the point been called to the attention of the court.

On the hearing for settlement of the final account of the bank, while the distributees did not appear in person or by

attorney, Mr. Busch, one of the executors of the Cosgrove will was present. He informed the court that the bank in accepting appointment as trustee agreed with him as executor to take over the $23,526.04, pay Mrs. McDermott five per cent on the amount during her life, and on her death pay the money to her appointees, receiving as consideration for the agreement whatever over five per cent it might receive out of its management of the fund. He insisted on payment in cash of $23,526.04 in accordance with this agreement regardless of how the bank may have invested the fund turned over to it. The bank insisted at the hearing that it was only liable as testamentary trustee to account for the securities in which it had invested the fund. We are unable to perceive why the agreement by the executors with the bank was not valid, and why it should not be carried out according to its terms and the terms of the order of the court and the letters of trust, above stated, that evidence that agreement. It strictly carried out the provision of the will that the beneficiary should receive the income of the fund during her life and that the fund should be paid to the appointees of the beneficiary at her death. It was made by the executors for the benefit of the appointees and we do not see why the appointees should not have been given the benefit of it and be entitled to enforce it according to its terms. But the court having decided the issue of the nature of the accounting in favor of the bank, whether it decided that issue rightly or wrongly, its decision in absence of fraud upon the court, could only be reviewed by appeal, and there was no appeal.

However, although the determination of the issue may be considered as settling that the bank was to administer the trust as testamentary trusts are regularly administered, this did not necessarily constitute the two mortgages proper trust-fund investments. If these mortgages did not constitute such investments, the distributees were not bound to accept them, and the trustee was bound to account for the money

it invested in them. Even if the finding of the court as to the value of the land covered by the Cheaters mortgage was of value double the amount of the mortgage when the trust-fund money was invested in it, and the distributees were compelled to accept that mortgage as a proper trust-fund investment, the Schaal mortgage was palpably an improper trust-fund investment because more than thirty per cent of the trust was invested in it, and the distributees were entitled to refuse to accept that mortgage. This phase of the case was not considered by the court at all. The impropriety of the investment was apparent on the face of the account itself. How the court, except from ignorance of the thirty per cent provision of the statute or from inadvertence, could have included the Schaal mortgage in the trust, is beyond our comprehension. Had the distributees objected to the inclusion of this mortgage it must have been rejected and the bank required to account for the money taken for it by the bank from the fund. If counsel for the bank knew of the thirty per cent provision of the statute and had it in mind, their failure to call it to the attention of the court would verge upon, if it would not constitute, a fraud upon the court. If such was the case it would seem that counsel owed the court the duty to call the point to the court's attention, and protect the court from committing an error that was both palpable and grievous. If counsel did not have the provision in mind the inclusion of the mortgage in the trust could not, perhaps, be construed as fraud upon the court. There was no concealment of the fact of the excessive investment, as the amount of the mortgage was stated in the final account. If the provision was not in mind of counsel, the inclusion was, perhaps, only erroneous and remediable only by appeal. One fact appears as to which there was concealment by the bank. On the original hearing there was no disclosure by the bank that the two above-mentioned mortgages were owned by the bank and were transferred to the trust fund and trust money taken by

the bank in payment therefor. The inventory comprised in the bank's final and only report to the court merely describes the two mortgages as notes and mortgages of George Schaal and James Cheaters, without any indication that they ever belonged to the bank, and the transcript of the testimony taken at the original hearing shows that no mention of this fact was then made. At the hearing of the instant petition there was produced from the bank file a writing, dated November 23, 1923, which purports to be a declaration by the bank of the securities in which the trust fund was invested. It shows the total investment of $23,526.04. It includes the Schaal mortgage and the Cheaters mortgage among the trust securities, and recites that it "does hereby assign to the fund real-estate mortgage of George F. Schaal for $15,000 dated August 8, 1923;" and that it "does hereby also assign to and hold in trust for said trust fund the real-estate mortgage of James Cheaters dated March 15, 1920." Both of these mortgages and the notes they secured ran to the bank.

It is a universally accepted rule that a testamentary or other trustee owes the "duty of loyalty" to the beneficiary. 1 Restatement, Trusts, § 170. § 205, *Id.* provides that a trustee is liable for any breach of trust. § 206, *Id.* reads: "The rule stated in § 205 is applicable where the trustee in breach of trust . . . sells his individual property to himself as trustee, or otherwise violates his duty of loyalty." Under comment *b,* p. 559, *Id.,* it is said: "The trustee violates his duty to the beneficiary if he sells trust property to himself individually. . . . " And under comment *c, Id.* p. 560, it is said: "If the trustee sells his individual property to himself as trustee . . . at his option, the beneficiary can set aside the purchase and compel the trustee to repay the amount of the purchase price with interest thereon, in which case the trustee will be entitled to receive from the trust estate the property and any income thereon actually received by the trust estate."

The same doctrine is clearly enunciated in a note in 105 A. L. R. 449, to *Matter of Filardo,* 221 Wis. 589, 267 N. W. 312. The note, while disavowing treatment of sales by trustees of their own property to themselves as trustee, cites *Bold v. Mid-City Trust & Savings Bank,* 279 Ill. App. 365, as holding that such a purchase is voidable at the instance of the beneficiary within a reasonable time after notice, and that on such course of action by the beneficiary the trustee is surcharged with the principal of the trust fund and interest. A multitude of cases is stated in the note cited referring to dealings of a trustee involving trust funds with affiliate cor- porations of the trustee or with corporations of which the trust officers are officers or stockholders, all of which treat such dealings as breaches of trust. With greater reason are such dealings of a trustee with its individual property breaches of trust.

The same subject is treated in a note in 39 Michigan Law Review, 345. In the leading case there dealt with, *In re Builders' Estate,* 137 Ohio St. 26, 17 O. O. 364, 27 N. E. (2d) 939, it was held that purchases by a trustee from its own bond department were illegal because of self-dealing. The note states : "The fundamental duty of loyalty of a fiduciary is breached when a corporate trustee purchases for the trust securities owned by its bond department or securities in which it has a substantial interest;" citing 1 Restatement, Trusts, § 170, comment *i; First Nat. Bank of St. Petersburg v. Solomon* (5th Cir.), 63 Fed. (2d) 900; *Joliet Trust & Savings Bank v. Ingalls,* 276 Ill. App. 445 ; *Larson v. Security Bank & Trust Co.* 178 Minn. 209, 224 N. W. 235, 226 N. W. 697 ; 16 Tex. Law Review, 285 ; Scott, The Trustee's Duty of Loyalty ; 48 Harvard Law Review, 521, 539. The note further states : "Such a breach of fiduciary duty makes the transaction voidable at the option of the beneficiary within a reasonable time after he discovers the breach;" citing *Baxter v. Union Industrial Trust & Savings Bank,* 273 Mich.

642, 263 N. W. 762; *First State Bank of Pineville v. Catron,* 268 Ky. 513, 105 S. W. (2d) 162.

3 Bogert, Trusts and Trustees, p. 1947, § 612, states : "The principle that a trustee should exclude all selfish interest . . . applies to investments . . . [and] the purchase of securities from himself" violates this rule. See also § 489, *Id.*

The instant trustee was subject to this rule and is subject to the remedies open to the distributees for the violation of it. It might, perhaps, by following sec. 223.03 (10), Stats., although it is not a trust company organized under the state statutes to which the section applies, and getting permission of the court to sell its own securities to the trust, have escaped subjection to the rule but it did not get such permission. It was therefore plainly subject to having the investment on the two mortgages excluded from the trust investment, had request of the distributees for such relief been made at the hearing of the final account.

But although the inclusion of the two mortgages was improper because of the bank's dealing as trustee with itself, it still follows, as said in connection with the two matters previously discussed, that the inclusion was only erroneous and remediable only by appeal. It cannot be reached now unless some fraud was practiced upon the court that led to the inclusion.

We are of opinion that the withholding of the fact of self-dealing from the court constitutes such fraud. "The trustee in dealing with the beneficiary on the trustee's own account is under a duty to the beneficiary . . . to communicate to him all material facts in connection with the transaction which the trustee knows or should know." 1 Restatement, Trusts, § 170 (2).

The executor Busch testified on the instant hearing that the declaration of the bank showing the transfer of the securities owned by it to the trust was not shown to him. It could not have been shown to Mrs. McDermott as she was

never absent from Canada. Nor was it ever shown to the distributees, who on Mrs. McDermott's death became the beneficiaries of the trust. There is no evidence that the declaration was ever shown to the attorney of the executors. It was not signed until several months after the discharge of the executor, and after the discharge there was no occasion to show it to that attorney. It was not filed with the court, as it should have been and no approval of the self-dealing was procured by the court, or ever became known to the court so far as the evidence shows. The fault of the bank in not disclosing its self-dealing was as much a fraud upon the court as was that of a guardian *ad litem* in failing to call the attention of the court to undisputed facts showing that a will was not entitled to probate, which was held in *Parsons v. Balson,* 129 Wis. 311, 109 N. W. 136, to warrant the vacating of an order probating a will. It is said in the opinion, p. 317, that, "It is quite clear from the record that there was no wilful misconduct on the part of the guardian *ad litem* or any person connected with the proceedings." But this did not excuse the failure to disclose to the court the fact that would defeat the probate. It was also held in *Estate of Bailey,* 205 Wis. 648, 656, 238 N. W. 845, that the failure of the petitioner for the settlement of the estate of her deceased brother, in which a final order had been entered distributing the estate to the brothers and sisters and children of a deceased sister of decedent, to disclose to the court facts in her knowledge tending to show that the decedent left an illegitimate child whose parentage he had acknowledged bearing upon the existence of the child, constituted fraud upon the court, although she did not believe the child was his. In *Estate of Staab,* 166 Wis. 587, 166 N. W. 326, it was held that an order of the county court admitting a will to probate should be set aside as a fraud on the court if the person executing the will was in fact incompetent, where the petitioners were induced not to contest the will by a void

promise of the legatees to pay them a sum of money, which promise the legatees refused to fulfil. The basis of the holding in effect was that the concealment of the claim of incompetency and the facts on which the claim was based constituted a fraud upon the court for which it should vacate the order. We consider that the county court should have vacated the instant judgment approving the account of the trustee and assigning the mortgages to the distributees, if the distributees are not prohibited by laches from asserting the fraud upon the court by concealment of the fact of self-dealing by the trustee, or by ratifying the distribution of the mortgages to them or accepting such distribution by their conduct after learning of the judgment decreeing the distribution.

As to laches, the time for moving to vacate an order constituting fraud upon the court for concealment of facts does not arrive until discovery of the concealment that constituted that fraud. This is the general rule, as indicated in the Michigan Law Review article above cited. The point is adequately covered by this court in *Guardianship of Reeve,* 176 Wis. 579, 588, 186 N. W. 736, where it is held that an existence of suspicion of fraud does not constitute laches where facts to justify the suspicion are not within the knowledge of the petitioners. Here the concealed fact did not come to the knowledge of the petitioners until it came to the knowledge of their counsel on the instant hearing.

The bank claims that the distributees ratified the inclusion of the mortgages in the trust fund by their conduct. The conduct relied on is that after learning of the order distributing the mortgages to them, the distributees agreed with the bank that it should act as their agent in collecting the mortgages, and should secure the title to the mortgaged lands by foreclosure and purchase and sell the lands when an advantageous sale could be made. These things were all agreed to at the suggestion of the bank's attorney. No doubt

the agreements would amount to a ratification had they been made with knowledge of the facts relative to the non-eligibility of the mortgages as trust investments. Ratification implies on the part of the one against whom it is claimed knowledge of the material facts connected with the matter claimed to have been ratified. *Van Dale v. Prudential Insurance Co.* 225 Wis. 281, 274 N. W. 153. The distributees had no knowledge of the facts rendering the mortgages ineligible to investment in trust funds. Of one of those facts there was a concealment of the bank `from the distributees and that fact never became known until the time of the hearing of their petition. Up to the time of the hearing of the final account of the bank the distributees expected that they would receive the full amount of the trust fund. On the day the order was signed the attorney for the bank wrote all the distributees that the court held that each one was entitled to a distributive share of the "distributable assets on hand," which the letter stated consisted of "real estate mortgages *of the value of* $19,892.32, and cash to the amount of $3,928.51, making in the aggregate $23,820.93." In such letter was a receipt for the distributive share of the distributee, with request that each sign it and send it to the bank and a statement that the bank would then send to each his or her distributive share of the cash, and that the bank would endeavor to sell the mortgages and convert them into cash and distribute the cash received if that was the desire of the distributee. Upon receiving this letter several of the distributees wrote stating that they would not sign until they received the full share of the trust fund. Relating to this receipt one of the distributees wrote a letter, under date of May 25, 1937, to the county judge to which the judge made answer that the reason the bank wanted the receipt before the distributee received the money was that the bank had to sell the mortgages to realize the money; that they wished to do this by private, sale to save the "considerable expense"

of a "trustees' sale," which the distributees "would have to stand;" that as soon as the sale would be made "the balance of the money will be forwarded to you." The letter closed by saying that "you are perfectly safe in signing this receipt." It is plain that the distributees on the strength of numerous letters from the bank's attorneys became persuaded that the mortgages were properly included in the trust fund and that there was nothing for them to do but accept undivided interests in the mortgages and that what they did after the entry of the order was done on the suggestion of the bank's attorney and in the belief that it was the only or at least the best thing that could be done, and that at first they expected that they would soon get the full amount of the trust fund. Under these circumstances we consider that there was no ratification of the sale of the mortgages by the bank to itself as trustee.

In the situation above disclosed, the county court should have held the bank as owner of the mortgages to have sold them to itself as trustee, held the transaction invalid, set aside the orders approving the trustee's account and discharging it as trustee, set aside the receipts of the distributees, surcharged the trustee with the amount due on the mortgages on May 4, 1937, when the order vacated was entered, with interest from the date of that order.

*By the Court.*—The order of the county court is reversed, and the record remanded with directions to enter judgment in accordance with the opinion.