BANK OF CALIFORNIA, Administrator, w. w. a., Appellant, vs. HOFFMANN and others, Respondents.*

*June 6—July 12, 1949.*

* Motion for rehearing denied, with $25 costs, on October 11, 1949.

For the appellant there was a brief by *James H. Larson,* attorney, and *Lloyd G. Andrews* and *Matthew M. Wallrich* of counsel, all of Shawano, and oral argument by *Mr. Wallrich.*

For the respondents there was a brief by *Brazeau & Graves,* attorneys, and *Richard S. Brazeau* of counsel, all of Wisconsin Rapids, and oral argument by *Theo. W. Brazeau* and *Richard S. Brazeau.*

BROADFOOT, J.   On February 12, 1931, A. W. Hoffmann, C. H. Mees, Chas. H. Bowers, J. E. Arndt, F. M. Devaud, and P. C. Rogers were directors of the First National Bank of Marion and were also associated in an unincorporated joint business association located at Marion, Wisconsin, known as the J. E. Arndt Insurance Agency.   On that date the J. E. Arndt Insurance Agency executed two nonnegotiable promissory notes, each in the amount of $4,000 to Henry Dahl, payable thirty days after demand, with interest at the rate of four per cent per annum.   They were executed in consideration of the deposit by Henry Dahl of the sum of $8,000 with the insurance agency.   Apparently this money was used for the purpose of bolstering the assets of the First National Bank of Marion.   In 1934 a new charter was issued to the First National Bank in Marion.   Apparently the new bank took over most of the assets and liabilities of the First National Bank of Marion.   In order to eliminate the liability of the bank to the J. E. Arndt Insurance Agency, the comptroller of currency of the United States required the directors of the First National Bank of Marion, who were also members of

the agency, to assume and guarantee the payment of certain obligations, including the aforesaid notes, and in consideration therefor assigned to the agency assets with a face value in excess of $31,850.

J. E. Arndt was agent for said Henry Dahl under a power of attorney. He was also managing agent of the J. E. Arndt Insurance Agency. At more or less regular intervals J. E. Arndt mailed statements to Henry Dahl indicating the amount due to Dahl from the insurance agency. One such statement was mailed to Dahl in September, 1945, and showed a balance due Dahl of $10,382.45 as of July 1, 1945. On November 30, 1946, Arndt mailed to Dahl a new statement of his account with the insurance agency covering a period from July 1, 1945, to and including November 15, 1946. This statement showed a balance due Dahl of $10,147.57.

The complaint set out the original notes, the guaranty agreement, a release to the First National Bank of Marion by Henry Dahl, and the final statement from the J. E. Arndt Insurance Agency to Henry Dahl. The suit was to recover the amount shown due by the final statement, with interest from November 15, 1946. The defendants admitted the execution of the notes and the guaranty, but alleged that P. C. Rogers and F. M. Devaud, mentioned in the complaint as signers of said guaranty, are deceased; that their estates had been duly administered and notice to creditors duly given; that the time for filing claims against said estates had long since expired and that no claim was ever filed by Dahl or by anyone on his behalf, or on behalf of any claimant under said guaranty against either estate, and that the heirs of the two decedents were not parties to the guaranty and were not liable upon the notes or the guaranty. The answer further alleged that there

was no sum whatever due the estate of Henry Dahl or the plaintiff from the defendants or any of them for the reason. that the amount due Henry Dahl under the guaranty was fully paid, satisfied, and discharged during the lifetime of said Henry Dahl; that said Henry Dahl had surrendered and discharged the notes in exchange for certain bonds valued at $5,300.

At the trial J. E. Arndt testified that he had made a trip to Portland, Oregon, in June, 1938, where he saw Dahl; that Dahl made an oral waiver of thirty-five per cent of the amount due and released the notes in exchange for the bonds, and that thereafter Dahl agreed to accept personal notes of J. E. Arndt payable eleven years after date to Dahl, if living, or to his nephews and nieces in equal shares at the due date of the notes.

Two notes executed by J. E. Arndt were introduced in evidence. The first note for $4,000, dated November 15, 1946, due eleven years after date, was made payable to "Henry A. Dahl or upon his death to his nieces and nephews, share and share alike." It bears interest at three per cent per annum for the first year. There is a notation at the bottom of the note as follows: "Principal payments of $600 per annum to commence on this note November 15, 1953." The second note for $3,535.03 is dated January 2, 1947, due eleven years after date, and is payable to the order of the same payees with the same interest rate for the first year. At the bottom of the note and above the signature is the following notation: "Payments of $600 to be made on principal and interest each year and upon death of payee interest is to cease and first payment to the heirs to be due and payable one year after his death." Below the signature appears the following:

"Account detail:
"Original agency certificates...................$8,000.00
"Less 35% waiver agreement...................  2,700.00

"Balance original account.....................  5,300.00
"Less payments on account to 1/1/47...........  1,764.97

"Balance as per above note....................  3,535.03
"$3,535.03
"  2,700.00

"$6,235.03 figure to be used for arriving at interest due for year ending January 1, 1948."

Each year Arndt would destroy the old notes and issue new ones, which he retained, and in each instance the due date was eleven years from the date of the execution of the notes. Arndt admitted that he owed both of his personal notes and would begin payments to the nephews and nieces when he was able to ascertain their names and addresses.

The original notes dated in 1931 had been offered in evidence in federal court in a case involving the liquidation of the First National Bank of Marion, and could not be found. Copies, however, were furnished by the defendants, which bore a notation on the bottom thereof reading as follows: "Exchanged for 5M Murray and Astor Theatre Bonds and 5M Minnesota & Ontario Bonds" and the name "Henry A. Dahl." The bonds mentioned were part of the assets of the insurance agency that were to be used to liquidate and pay the claims of Dahl and other claimants.

The testimony of Arndt is inconsistent in many respects. He gave no explanation as to why he should give personal notes aggregating $7,535.03 for bonds with a market value of $5,300, nor is there any explanation in his testimony as to why he should issue notes in that amount on November 15, 1946, and January 2, 1947, and on November 30, 1946, issue and mail to Dahl a statement showing that the J. E. Arndt

Insurance Agency was indebted to Dahl on November 15, 1946, in the sum of $10,147.57.

· The trial court in its opinion made the following statement :

"As the record stands it appeals to the court that there is a simple question of fact presented and that being whether Henry Dahl voluntarily in his lifetime surrendered the original $4,000 certificates held by him and accepted in lieu thereof the notes of the defendant Arndt. As the record now stands there is nothing to contradict Arndt's testimony, and considering all of the evidence it cannot be considered that Arndt's testimony is so improbable as to be incredible."

It is apparent that the trial court overlooked the fiduciary capacity of J. E. Arndt. During all of the time these negotiations were in progress Arndt had a personal interest in the negotiations, as he was one of the directors of the bank and a member of the insurance agency; he was acting as managing agent of the insurance agency and he was also acting under a power of attorney from Henry Dahl.

"It is well settled that an agent is a fiduciary with respect to the matters within the scope of his agency. The very relation implies that the principal has reposed some trust or confidence in the agent. Therefore, the agent or employee is bound to the exercise of the utmost good faith and loyalty toward his principal or employer. He is duty bound not to act adversely to the interest of his employer by serving or acquiring any private interest of his own in antagonism or opposition thereto. His duty is to act solely for the benefit of the principal in all matters connected with his agency. This is a rule of common sense and honesty as well as of law. Any custom subversive of this principle must be deemed to be unreasonable, opposed to the policy of the law, and hence of no effect. Indeed, it has been stated that in the usual case, it is the duty of the agent to further his principal's interests even at the expense of his own in matters connected with the agency. But no presumption of fraud will be deemed to arise against an agent unless it appears that he has personal in-

terests conflicting with those of the principal." 2 Am. Jur., Agency, p. 203, sec. 252.

"The doctrine is familiar and well recognized that an agent cannot, either directly or indirectly, have an interest in the subject matter of the agency without the consent of his principal, freely given, after full knowledge of every matter known to the agent which might affect the principal. The object of the rule is to secure fidelity on the part of the agent to the principal and to insure the transaction of the business of the principal for his best advantage. This doctrine is based on the idea of closing the door to temptation to fraud and keeping the agent's eye single to the rights and welfare of his principal, rather than on the idea that the transaction is necessarily an injury to, or a fraud upon, the principal. Hence, a principal need not prove any injury to avoid a transaction in which the agent has acted as an adverse party without his knowledge and consent. The principle is one of prevention, not remedial justice, which operates however fair the transaction may have been—however free from every taint of moral wrong." 2 Am. Jur., Agency, p. 204, sec. 253. See also *Hutson v. Jenson*, 110 Wis. 26, 85 N. W. 689; *Matter of Filardo*, 221 Wis. 589, 267 N. W. 312; *Will of Cosgrove*, 236 Wis. 554, 295 N. W. 784.

From an examination of the record, with this familiar rule in mind, it can only be concluded that Arndt was dealing in bad faith with his principal, Henry Dahl, and that the transactions, if actually made as he stated, are voidable at the election of the plaintiff.

The record also fails to show any consideration for the exchange of the original notes for the bonds or for the exchange of the bonds for the personal notes of J. E. Arndt.

The trial court was correct in dismissing the complaint as to L. M. Devaud, Lulu Beyers, Emory S. Rogers, Myron H. Rogers, Laura R. Sonnevil, and Ingar R. Martin. As to the defendants Hoffmann, Mees, Bowers, and Arndt the plaintiff is entitled to judgment against them for the sum of

$10,147.57 with interest at the rate of four per cent per annum from and after November 15, 1946.

*By the Court.*—That part of the judgment dismissing the complaint as to L. M. Devaud, Lulu Beyers, Emory S. Rogers, Myron H. Rogers, Laura R. Sonnevil, and Ingar R. Martin is affirmed; that part of the judgment dismissing the complaint against the remaining defendants is reversed, and cause remanded with instructions to enter judgment in accordance with this opinion.

The following opinion was filed October 11, 1949:

BROADFOOT, J. (*on motion for rehearing*). On their motion for rehearing the defendants and respondents contend they have not had their day in court upon the matter of the account; that the case was tried as a suit to recover upon two notes; that the account was only between Arndt and Dahl and the remaining defendants are not liable thereon; that the transactions disclosed upon the trial were voidable only and Dahl did not act promptly in disaffirming them; and that the nieces and nephews of Dahl are necessary parties to any final determination of the issues.

We have again carefully reviewed the record. The complaint was based upon the account and the prayer for relief was for the amount stated to be due on the account, with accrued interest and costs. The account is stated to be that of the insurance agency, and Arndt acted as agent for it and its individual members. The defendants were ably represented, they introduced evidence of the transactions, and they do not now claim that they could produce additional evidence. The record appears to be complete. It appears in the record that the money is available to pay the obligation and we cannot see that any defendant will be harmed.

The record does not disclose that the defendants ever made a full disclosure to Dahl of Arndt's fiduciary capacity and conflicting interests. The transactions were voidable by Dahl or his personal representative when the full facts were known.

The nephews and nieces of Dahl are not parties to this action. Defendants made no effort to make them parties. They have no complaint on that score.

*By the Court.*—Motion denied with $25 costs.