PER CURIAM.
¶1 This appeal arises from an action brought by Bank of America, N.A. (BANA) to foreclose upon a mortgage secured by real estate owned by Thomas and Michelle Juza. In 2010, the circuit court granted summary judgment of foreclosure to BANA. The sole evidentiary support the court relied upon in doing so was an affidavit BANA filed from Robert Rybarczyk.
¶2 In 2016, after multiple failed attempts to sell the foreclosed property, the Juzas brought a motion to vacate the judgment of foreclosure and dismiss the underlying foreclosure action. As grounds, they alleged that BANA had committed a fraud on the circuit court by submitting the Rybarczyk affidavit, as BANA knew that Rybarczyk lacked personal knowledge of the facts he averred to in his affidavit. Following an evidentiary hearing, the court concluded that BANA had, in fact, committed a fraud on the court. Accordingly, it granted the Juzas' motion to vacate the foreclosure judgment and dismissed the foreclosure action with prejudice.
¶3 Wells Fargo Bank, N.A.-BANA's successor in interest-now appeals, raising two primary arguments. First, it contends there was insufficient evidence to support the circuit court's conclusion that BANA committed fraud on the court. Second, it asserts that even if the court properly concluded BANA committed fraud on the court, the court erroneously exercised its discretion by dismissing the underlying foreclosure action with prejudice. We reject both of those arguments, as well as various other challenges Wells Fargo brings to the court's decision, and therefore affirm the judgment. Nonetheless, we reject the Juzas' assertion that Wells Fargo's appeal is frivolous, and we therefore deny their motion for an award of attorney fees and costs under WIS. STAT. RULE 809.25(3) (2017-18).[1]
BACKGROUND
¶4 In 2004, the Juzas executed a note to BANA secured by a mortgage upon their real property. In 2009, BANA filed this foreclosure action. BANA alleged in its complaint that it was the "current owner and holder" of the Juzas' note and mortgage. The Juzas filed a pro se answer to BANA's complaint admitting that allegation.
¶5 BANA subsequently moved for summary judgment. In support, it filed the Rybarczyk affidavit. In his affidavit, Rybarczyk averred that he was an employee of "Bank of America Mortgage, the servicer/holder of the mortgage" and that BANA was "the current owner and holder of [the Juzas'] mortgage and note." Further, he averred that he had "possession, control and responsibility for the accounting records relating to the mortgage loan which is the subject of this action," and that his affidavit was based upon his "own personal knowledge." Rybarczyk also averred that the Juzas were in default of their mortgage, they had been advised of their right to cure their default, and they had failed to do so.
¶6 The Juzas did not contest BANA's summary judgment motion, nor did they appear at a hearing on the motion. At that hearing, counsel for BANA informed the circuit court of an inaccuracy in the Rybarczyk affidavit. Specifically, counsel informed the court that although Rybarczyk had averred that the property secured by the Juzas' mortgage was not occupied, the Juzas did, in fact, occupy the property.
¶7 On February 5, 2010, the circuit court granted BANA's motion for summary judgment of foreclosure. In its written order, the court stated that its decision relied upon it "having examined the [Rybarczyk] affidavit."
¶8 Five months later, BANA executed an assignment of the Juzas' mortgage, "together with the previously transferred note secured thereby," to Wells Fargo. Accordingly, Wells Fargo was substituted as plaintiff nunc pro tunc in the instant case.
¶9 In 2011, the Juzas' property was sold at a sheriff's sale for a winning bid of $540,000. Wells Fargo moved to confirm that sale, but the Juzas objected on the basis that the winning bid amount did not represent the fair market value of their property. At a hearing, the circuit court determined that the fair market value of the property was $709,000. Based on that fair market value, the court found the winning bid of $540,000 "unreasonably low," and it therefore denied Wells Fargo's motion to confirm the sale.
¶10 In 2013, the property was again sold at a sheriff's sale, this time for $411,500. Wells Fargo moved to confirm the sale, but proceedings on that motion were stayed multiple times as a result of the Juzas filing numerous bankruptcy petitions.
¶11 In one of the bankruptcy proceedings, Wells Fargo filed a motion with the bankruptcy court "for an order for relief from the automatic stay ... pursuant to section 1301(c) of the Bankruptcy Code." The Juzas objected to Wells Fargo's standing to seek such relief, stating that Wells Fargo had failed to "make even a prima facie case that it is in possession of the original note." The Juzas acknowledged, however, that "if [Wells Fargo] is the holder of the note ... then [Wells Fargo] is entitled to relief from the stay." The Juzas ultimately withdrew their objection to Wells Fargo's standing after they hired a document examiner to inspect the note at the offices of Wells Fargo's counsel. Consequently, on December 21, 2015, the bankruptcy court granted Wells Fargo relief from the stay.
¶12 On March 22, 2016, the circuit court held a hearing on Wells Fargo's motion to confirm the 2013 sheriff's sale. At the conclusion of this hearing the Juzas contended Wells Fargo was not the holder of the note and mortgage. As a result, the court directed the Juzas to submit a written objection to a confirmation of the sale and ordered Wells Fargo "to show that you are the holder of the note and the mortgage."
¶13 In addition to filing objections to the confirmation of sale, the Juzas-now represented by counsel-moved the circuit court "for an Order vacating the judgment of foreclosure, dismissing Plaintiff's foreclosure claim with prejudice." As grounds for that motion, the Juzas asserted that BANA and Wells Fargo had "committed fraud upon the court." The Juzas supported their assertion by filing an affidavit from Marie McDonnell.
¶14 McDonnell averred that she was a "Mortgage Fraud and Forensic Analyst." As relevant to this appeal, she further averred that: (1) BANA was not the owner and holder of the Juzas' note when it filed its foreclosure complaint; (2) the Rybarczyk affidavit contained multiple false averments, including Rybarczyk's averment that he "ma[d]e this affidavit from [his] own personal knowledge"; (3) BANA was not the owner and holder of the Juzas' note when the judgment of foreclosure against the Juzas was entered; (4) Wells Fargo knew of these issues when it was substituted as plaintiff; and (5) Wells Fargo was not the current owner of the Juzas' note and mortgage.
¶15 Wells Fargo opposed the Juzas' motion, and the parties' pending motions were set for a hearing on December 13, 2016. One day prior to this hearing, the Juzas faxed a correspondence to the circuit court requesting an adjournment in order to allow them to "bring Ms. McDonnell to Green Bay to testify and answer any questions the Court may have." It is undisputed that the Juzas served a copy of this correspondence on Wells Fargo's attorneys. The court ultimately granted the Juzas' request and rescheduled the hearing for February 6, 2017.
¶16 At the rescheduled hearing, the circuit court began by inquiring whether the parties would like to begin by calling witnesses or presenting arguments. Wells Fargo's counsel objected to the calling of witnesses, stating, "Your Honor, this wasn't noticed as an evidentiary hearing. I would object to hearing testimony." The court overruled the objection, and the Juzas called McDonnell as a witness.
¶17 McDonnell testified that Rybarczyk was a "robo-signer" who falsely averred that he had personal knowledge of the facts contained in his affidavit.[2] She based that conclusion on the fact that Rybarczyk's name appeared on a list of known robo-signers compiled for "the register of deeds for Essex County in the southern district of Massachusetts." Further, she stated that her review of Rybarczyk's affidavit revealed a number of factual errors that showed "he doesn't know what he's talking about [in his affidavit]." She testified that Rybarczyk "got the figures wrong pretty much across the board," including an overstatement of "the amount due at that point by almost $11,000."
¶18 Counsel for Wells Fargo did not cross-examine McDonnell or call any rebuttal witnesses. Counsel did state that Wells Fargo had the "original note here" in the courtroom, but the note was never presented to the court or entered into evidence.
¶19 At the conclusion of the hearing, the circuit court orally granted the Juzas' motion to vacate the foreclosure judgment. The court explained:
It appears to me that this Robert Rybarczyk was, in fact, a robo-signer. And I granted that motion for summary judgment because I believed that he knew these facts on his individual knowledge and was setting forth an affidavit to the Court for the Court to rely on. He didn't. And he is not here today to say otherwise.
And you [counsel for Wells Fargo] had possession of the affidavit from [the Juzas'] counsel and [McDonnell] knowing that they are challenging the veracity of this robo-signer, Robert Rybarczyk, and you didn't get an affidavit from him to the contrary, you didn't bring him in here today. So, I'm left with nothing but to believe that he just was a robo-signer, and given his inaccuracies and false statements, it was fraud on the Court.
¶20 The circuit court also dismissed the underlying foreclosure action with prejudice, stating: "I'm precluding [BANA] or [its] assignees to further proceed on the mortgage itself. They attempted to foreclose on a mortgage falsely, on the basis of fraud .... But I indicated that I'm not ruling on the note. I'm not saying the note is invalid." The court memorialized its decision in a written judgment setting forth its findings of fact and conclusions of law. Wells Fargo now appeals.
STANDARD OF REVIEW
¶21 We review a circuit court's order granting or denying a motion for relief under WIS. STAT. § 806.07 using the erroneous exercise of discretion standard. See Lenticular Europe, LLC v. Cunnally , 2005 WI App 33, ¶9, 279 Wis. 2d 385, 693 N.W.2d 302. Likewise, we also review a circuit court's imposition of a sanction for a party's misconduct for an erroneous exercise of discretion. Schultz v. Sykes , 2001 WI App 255, ¶8, 248 Wis. 2d 746, 638 N.W.2d 604. We will affirm a circuit court's discretionary decision if it examined the relevant facts, applied a proper standard of law, and reached a reasonable conclusion. Id.
¶22 A discretionary determination may involve both findings of fact and conclusions of law. Covelli v. Covelli , 2006 WI App 121, ¶13, 293 Wis. 2d 707, 718 N.W.2d 260. We review questions of law independently, but we will not overturn the circuit court's factual findings unless they are clearly erroneous. Id.
DISCUSSION
I. Fraud on the court
¶23 We begin with Wells Fargo's contention that "the record does not support a finding that BANA committed fraud" on the circuit court. As a threshold matter, we reiterate that the court found that BANA committed fraud on the court by knowingly submitting an affidavit from an affiant who falsely claimed to have personal knowledge of the facts contained within his affidavit. The court further explained its rationale, first set forth in its oral decision, in its written findings of fact:
The Court granted [BANA's] motion for summary judgment because it believed that Rybarczyk had personal knowledge of the facts in his affidavit and he set forth facts for the Court to rely upon based on his claim of personal knowledge. [Wells Fargo] received the [McDonnell affidavit] that challenged the veracity of Rybarczyk and [Wells Fargo] did not present any evidence to show he was anything but a robo-signer who did not have personal knowledge of the statements in his affidavit and only signed the affidavit as a matter of function. The Court is left with nothing but to believe that Rybarczyk was a robo-signer, and given his inaccuracies and false statements, the submission of Rybarczyk's affidavit by [BANA] was fraud on the Court.
¶24 On appeal, Wells Fargo focuses on the veracity of a single statement in the Rybarczyk affidavit-specifically, Rybarczyk's statement "that BANA was the current owner and holder of [the Juzas'] mortgage and note." It then argues that any "other issues [with the Rybarczyk affidavit] could not have had any practical effect on the circuit court's grant of summary judgment." As a result, Wells Fargo never truly joins issue with the court's rationale for finding that BANA committed fraud on the court-i.e., that BANA knew Rybarczyk did not have personal knowledge of the facts averred to in his affidavit, but it nevertheless submitted his affidavit to the court. Indeed, Wells Fargo does not even assert that Rybarczyk actually had personal knowledge of the facts he averred to in his affidavit.
¶25 Having clarified the basis of the circuit court's finding of fraud on the court, we proceed to address whether the court's finding is supported by the facts in the record and the reasonable inferences derived therefrom. See Johnson v. Johnson , 157 Wis. 2d 490, 497, 460 N.W.2d 166 (Ct. App. 1990). We agree with the Juzas that the evidence in the record supports the court's finding that Rybarczyk did not have personal knowledge of the information contained in his affidavit.
¶26 The circuit court's finding was based on the following evidence presented by McDonnell: (1) Rybarczyk was a "known robo-signer"; (2) Rybarczyk contradicted himself within his affidavit by stating he was an employee of "Bank of America Mortgage" but signing as "assistant vice president of Bank of America, N.A."; (3) Rybarczyk misstated the amount owed by the Juzas on their mortgage; (4) Rybarczyk wrongly stated the Juzas' residence was not owner occupied; (5) Rybarczyk "did not have possession, control and responsibility for the [Juzas'] loan account records; and (6) BANA routinely employed robo-signers and did so with a "knowing disregard for the truth." Notably, Wells Fargo did not present any evidence to impeach McDonnell's testimony, either via an affidavit, a rebuttal witness, or through cross-examination. Accordingly, we conclude that McDonnell's testimony alone provided more than ample support for the court's finding that Rybarczyk submitted an affidavit without having personal knowledge of the facts to which he averred. Moreover, the court could reasonably conclude that Rybarczyk's lack of personal knowledge extended to his averment that that BANA was the owner and holder of the Juzas' note in 2009.
¶27 Wells Fargo also argues that the circuit court applied an improper standard of law because "fraud on the court requires more than the mere possibility of perjury by a witness." In support, it points to Dekker v. Wergin , 214 Wis. 2d 17, 23-24, 570 N.W.2d 861 (Ct. App. 1997). In Dekker , we "noted that fraud upon the court does not exist where the scheme to defraud is inconclusive, i.e. obtained with the aid of a witness who, on the basis of after-discovered evidence, is believed possibly to have been guilty of perjury." Id.
¶28 Wells Fargo mistakenly relies on Dekker because this case does not involve a witness who is "believed possibly" to have been guilty of perjury. Rather, it involves a party's knowing submission of an affidavit in which the circuit court found, as a matter of fact, that the affiant falsely claimed personal knowledge of matters he did not have. As such, the court did not apply an improper legal standard by determining that BANA's conduct constituted a fraud on the court.
¶29 Again, Wells Fargo had the opportunity to challenge McDonnell's testimony, or to introduce evidence that Rybarczyk did not falsely aver that he had personal knowledge of the facts contained in his affidavit. It failed to do so. Thus, on this record, we cannot conclude that Rybarczyk was a witness who was only "believed possibly" to be guilty of perjury.
¶30 Wells Fargo also argues that "[a]ny arguable misstatement by Rybarczyk also was cured by the substitution of Wells Fargo as the plaintiff nunc pro tunc." In addition to being undeveloped, that argument again misses the mark. The circuit court's finding that BANA committed fraud on the court was not grounded in the fact that Rybarczyk made an "arguable misstatement." It was grounded in the fact that BANA knowingly submitted an affidavit from an affiant who misrepresented having personal knowledge of the material facts to which he averred. Wells Fargo provides no citation to any legal authority, and we are not aware of any, that the substitution of a plaintiff can "cure" such behavior. We will not address this undeveloped argument further. See State v. Pettit , 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).
II. Dismissal
¶31 Wells Fargo next argues that the circuit court erroneously exercised its discretion by dismissing the underlying foreclosure action with prejudice as a sanction for BANA's fraud on the court.[3] Wisconsin circuit courts have the power to impose sanctions for litigation misconduct. See Schultz , 248 Wis. 2d 746, ¶9. However, because dismissal is a particularly harsh sanction, our supreme court "has held that dismissal is proper only when the plaintiff has acted in bad faith or has engaged in egregious misconduct." Id.
¶32 Wells Fargo contends that the circuit court erroneously exercised its discretion by imposing "too harsh" of a sanction. It reasons that the sanction was too harsh because "the Juzas and their expert fell far short of proving fraud." But, as we have already determined, Wells Fargo's contention that the court's finding of fraud on the court was not supported by the record lacks merit. A party's commission of a fraud on the court by submission of a false affidavit-an action akin to the subornation of perjury-is one of those "egregious practices which threaten[s] the dignity of the judicial process." See id. , ¶12. Accordingly, we conclude the court did not erroneously exercise its discretion by imposing "too harsh" of a sanction. See id.
¶33 Our conclusion that the circuit court's sanction was not "too harsh" is further reinforced by the fact that the court, despite dismissing the foreclosure action with prejudice, exercised it discretion to dismiss "the judgment on the note ... without prejudice." To that end, the court clearly stated in its order granting judgment to the Juzas that "a subsequent action may be brought to enforce the rights of the holder of the note." This decision struck a reasonable balance between sanctioning BANA's misconduct, on the one hand, and preventing the Juzas from completely escaping their obligation to repay the note, on the other hand.
III. Due Process
¶34 Wells Fargo next argues that the circuit court "violated [Wells Fargo's] due process rights when it dismissed the foreclosure claim ... without holding an evidentiary hearing pursuant to notice." "Procedural due process requires that a party whose rights may be affected by government action be given an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right for which the constitutional protection is invoked." City of S. Milwaukee v. Kester , 2013 WI App 50, ¶13, 347 Wis. 2d 334, 830 N.W.2d 710. Whether a due process violation has occurred is a question of law that we review independently. Id.
¶35 The record belies Wells Fargo's assertion that it lacked proper notice of the circuit court's intent to hold an evidentiary hearing. On July 28, 2016, the Juzas filed their motion to vacate the foreclosure judgment and dismiss the action. That same day, they filed McDonnell's affidavit, setting forth her detailed rationale as to why she had concluded that Rybarczyk's affidavit was fraudulent and its submission by BANA amounted to a fraud on the court.
¶36 The circuit court originally scheduled a hearing on the parties' pending motions, including the Juzas' motion to vacate and dismiss, on December 13, 2016. However, the day prior to the hearing, the Juzas' counsel faxed a correspondence to the court-a copy of which was undisputedly served upon Wells Fargo's attorneys-requesting an adjournment in order to "bring Ms. McDonnell to Green Bay to testify and answer any questions the Court may have."
¶37 The circuit court granted the Juzas' adjournment request and rescheduled the hearing for February 6, 2017. Still, despite the Juzas' clear statement that they requested an adjourned hearing for the purpose of calling McDonnell at that hearing, Wells Fargo's counsel objected at the beginning of the hearing, stating: "Your Honor, this wasn't noticed as an evidentiary hearing. I would object to hearing testimony at this hearing." The court overruled this objection and allowed McDonnell to testify.
¶38 We agree with the Juzas that the circuit court did not erroneously exercise its discretion by overruling Wells Fargo's objection and allowing McDonnell to testify. Wells Fargo had more than adequate notice that the Juzas intended to call McDonnell as a witness at the adjourned hearing and that she would be testifying to the fact that BANA had committed a fraud on the court through its submission of the Rybarczyk affidavit. Wells Fargo therefore had adequate opportunity to call witnesses to rebut McDonnell's testimony, or to cross-examine McDonnell. Any blame for Wells Fargo's failure to do so is solely attributable to Wells Fargo's counsel's failure to adequately prepare for a properly noticed evidentiary hearing. Hence, there was no due process violation.
IV. WISCONSIN STAT. § 806.07
¶39 Wells Fargo next argues that, even assuming the circuit court properly found BANA committed fraud upon the court, the Juzas were not entitled to relief from the judgment of foreclosure under WIS. STAT. § 806.07. Section 806.07 grants courts power to relieve parties from judgments, orders and stipulations. Sukala v. Heritage Mut. Ins. Co. , 2005 WI 83, ¶9, 282 Wis. 2d 46, 698 N.W.2d 610. As indicated, we review a court's order granting or denying a motion for relief under WIS. STAT. § 806.07 using the erroneous exercise of discretion standard. See Lenticular Europe , 279 Wis. 2d 385, ¶9.
¶40 The purpose of WIS. STAT. § 806.07 is to achieve a balance between two interests: "fairness in the resolution of disputes and the policy favoring the finality of judgments." Edland v. Wisconsin Physicians Serv. Ins. Corp. , 210 Wis. 2d 638, 644, 563 N.W.2d 519 (1997). Section 806.07 enhances fairness in the administration of justice by authorizing a circuit court to vacate its judgments on various equitable grounds. Edland , 210 Wis. 2d at 644. And the statute furthers the policy favoring finality by generally limiting the time period for motions to be brought to within one year of the entry of judgment. Id. ; sec. 806.07(2). However, motions brought under the statute's catch-all provision, § 806.07(1)(h),[4] may be brought "within a reasonable time" of the entry of judgment, as long as the party seeking relief can prove that extraordinary circumstances exist. Sec. 806.07(2) ; Sukala , 282 Wis. 2d 46, ¶12.
¶41 Wells Fargo argues WIS. STAT. § 806.07 fails to provide an avenue through which the Juzas could seek relief for two reasons: (1) Section 806.07(2) requires a party to file an independent action if it seeks relief based upon a fraud on the court; and (2) the Juzas were "guilty of laches."[5] We address and reject each argument in turn.[6]
¶42 First, WIS. STAT. § 806.07(2) does not require a party to file an independent action if the party is seeking relief based upon a fraud on the court. That subsection provides, in relevant part, that it "does not limit the power of a court to entertain an independent action to relieve a party from judgment, order, or proceeding, or to set aside a judgment for fraud on the court." This language "clearly furnishes a party with two additional avenues for relief from a judgment or order" under § 806.07. Walker v. Tobin , 209 Wis. 2d 72, 77, 568 N.W.2d 303 (Ct. App. 1997). Stated differently, § 806.07(2) does not preclude a party from obtaining relief under the provisions of § 806.07(1) simply because the party's motion asserts that it is entitled to relief based upon a fraud on the court; instead, it merely permits an independent action as an alternate avenue by which to seek relief. The Juzas permissibly chose to do so by motion rather than by filing an independent action.
¶43 Second, we are not persuaded that the Juzas were guilty of laches. The equitable doctrine of laches may prevent a party from asserting a claim when three elements are satisfied: "(1) unreasonable delay by the party seeking relief, (2) lack of knowledge or acquiescence by the party asserting laches that a claim for relief was forthcoming, and (3) prejudice to the party asserting laches caused by the delay." Dickau v. Dickau , 2012 WI App 111, ¶9, 344 Wis. 2d 308, 824 N.W.2d 142. Here, Wells Fargo does not assert that the Juzas unreasonably delayed raising their fraud on the court claim once they became aware that the Rybarczyk affidavit appeared to be fraudulent. Rather, it asserts that "the Juzas were not diligent in protecting their rights." In other words, Wells Fargo argues that the Juzas unreasonably delayed discovering that BANA committed a fraud on the court.
¶44 We agree with the Juzas that Wells Fargo's argument runs afoul of our supreme court's statement that "[a]s to laches, the time for moving to vacate an order constituting fraud upon the court for concealment of facts does not arrive until discovery of the concealment that constituted that fraud." McDermott v. Lumbermen's Nat'l Bank , 236 Wis. 554, 566, 295 N.W. 784 (1941). Wells Fargo attempts to distinguish McDermott by arguing that the finding of fraud on the court in that case was based upon the concealment of facts from the court, as opposed to the submission of a fraudulent affidavit. See id. We do not perceive any meaningful distinction between fraudulently concealing facts from a court and fraudulently claiming personal knowledge of facts in a sworn affidavit. Again, Wells Fargo fails to point to any facts indicating the Juzas should have earlier discovered the Rybarczyk's affidavit was fraudulent and it does not allege that the Juzas unreasonably delayed asserting their fraud claim after they discovered the basis for doing so. Wells Fargo has therefore failed to establish that the Juzas were guilty of an unreasonable delay.
¶45 Even assuming, arguendo, that the Juzas were guilty of an unreasonable delay, we still conclude that Wells Fargo's laches claim fails because it did not show it was prejudiced by the Juzas' delay. See Yocherer v. Farmers Ins. Exch. , 2002 WI 41, ¶23, 252 Wis. 2d 114, 643 N.W.2d 457 (A party asserting a defense of laches against a claim bears the burden to show they were prejudiced). On appeal, Wells Fargo simply states that the prejudice it suffered is "manifest. In addition to the substantial delay and cost associated with this matter since 2010, the disputed affidavit is now over eight years old and Rybarczyk's whereabouts are unknown."
¶46 Wells Fargo, however, points to no evidence in the record showing it ever tried to locate Rybarczyk. Nor has it explained why the delay in the Juzas' bringing of their claim prevented it from producing a witness to rebut McDonnell's testimony, or at the very least from cross-examining her as to why she concluded that Rybarczyk was a robo-signer. Consequently, we conclude Wells Fargo has failed to satisfy its burden to show that it was prejudiced by the Juzas' alleged unreasonable delay in asserting its claim of fraud on the circuit court.
V. Claim Preclusion and Issue Preclusion
¶47 Wells Fargo next argues the circuit court erred in allowing the Juzas to argue that Wells Fargo was not the current owner and holder of their note because the doctrines of claim preclusion and issue preclusion should have barred them from doing so. As grounds, it states that "the Juzas already contested, and then withdrew, an objection to Wells Fargo's status as holder" of the note in the Juzas' prior bankruptcy proceedings.
¶48 We agree with the Juzas that Wells Fargo forfeited its preclusion arguments by failing to develop them in the circuit court. Although Wells Fargo argues that it preserved the issues for our review by presenting them "to the circuit court in briefing," the record shows that Wells Fargo's presentation of its argument was limited to the following sentence: "the [Juzas'] purported counterclaims are untimely, barred by the doctrine of laches and claim preclusion, and otherwise fail to state any valid cause of action." This conclusory assertion deprived both the court and the Juzas of an opportunity to address Wells Fargo's preclusion arguments in a forum where facts and a record could be developed. Consequently, we deem Wells Fargo's arguments forfeited.[7] See State v. Ndina , 2009 WI 21, ¶30, 315 Wis. 2d 653, 761 N.W.2d 612.
VI. Motion for Frivolous Costs
¶49 Finally, the Juzas have filed a motion asking this court to declare Wells Fargo's appeal frivolous and to award the Juzas costs, fees and reasonable attorney fees pursuant to WIS. STAT. RULE 809.25(3). The Juzas contend Wells Fargo's appeal is "meritless, frivolous and vexatious" and that Wells Fargo should have known the appeal had no good faith basis in law or equity. See RULE 809.25(3)(c)2. The Juzas also contend that because there was no good faith basis for Wells Fargo's appeal, it must have been filed in bad faith for the purpose of "further harassing" them. See RULE 809.25(3)(c)1.
¶50 When assessing whether a party's appeal is frivolous, the question is not "whether [the party] can prevail on [its] claim, but whether the claim is so indefensible that the party or [its] attorney should have known it to be frivolous." Baumeister v. Automated Prods., Inc. , 2004 WI 148, ¶28, 277 Wis. 2d 21, 690 N.W.2d 1. In this case, although we affirm the circuit court's orders and grant of judgment to the Juzas, we cannot conclude that Wells Fargo's challenges to the court's decisions were wholly indefensible. While Wells Fargo was unsuccessful in its efforts to show the court erroneously exercised its discretion in granting the Juzas' motion to vacate and dismiss, that does not mean there was no good faith basis in law or fact for it to raise the issues it did in its appeal. When assessing a motion for attorney fees and costs under WIS. STAT. RULE 809.25(3), we must resolve all doubts in favor of finding an appeal nonfrivolous. Baumeister , 277 Wis. 2d 21, ¶28. In addition, we observe there is no evidence in this case indicating that Wells Fargo or its attorneys acted solely for the purpose of harassing the Juzas.
¶51 We therefore decline to find Wells Fargo's appeal frivolous, and we deny the Juzas' motion for attorney fees and costs.
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

"[R]obo-signing refers to 'assembly-line signing and notarizing of affidavits for foreclosure cases, mortgage assignments, note allonges and related documents, all filed in courts and deed recorders in counties across the United States.' " Klem v. Washington Mut. Bank , 295 P.3d 1179, 1190 n.14 (Wash. 2013) (citation omitted).

Wells Fargo repeatedly asserts in its briefs that the circuit court "abused" its discretion. Our supreme court changed the terminology used when reviewing circuit courts' discretionary decisions from "abuse of discretion" to "erroneous exercise of discretion" in 1992. See State v. Plymesser , 172 Wis. 2d 583, 585 n.1, 493 N.W.2d 367 (1992).

Wisconsin Stat. § 806.07(1)(h) authorizes a circuit court to relieve a party from a judgment, order or stipulation for "any other reasons justifying relief from the operation of the judgment."

Wells Fargo also argues-in a single sentence within a footnote-that any motion "brought under the catchall of [ Wis. Stat. ] § 806.07(1)(h)" would be time barred "because it was not brought within a reasonable time." However, as explained further below, Wells Fargo does not allege that the Juzas failed to promptly assert their fraud on the court claim once they discovered the Rybarczyk affidavit was likely fraudulent. Consequently, we conclude that the motion to vacate and dismiss was brought within a reasonable time. We note that this conclusion is reinforced by the fact that, although the circuit court granted BANA summary judgment of foreclosure in 2010, the underlying foreclosure action was ongoing when the Juzas brought their § 806.07 motion because the sale of the Juzas' property had not yet been confirmed. As we also conclude that a party obtaining a judgment based solely upon a fraudulent affidavit is an extraordinary circumstance, the Juzas were therefore entitled to relief under § 806.07(1)(h). See Sukala v. Heritage Mut. Ins. Co. , 2005 WI 83, ¶12, 282 Wis. 2d 46, 698 N.W.2d 610 ("[E]xtraordinary circumstances are those where the sanctity of the final judgment is outweighed by the incessant command of the court's conscience that justice be done in light of all the facts.").

Although it appears that Wells Fargo raised its laches argument in the circuit court, it does not provide any record citation showing that it developed its independent action argument in that court. We could deem its independent action argument forfeited on that basis, however, we have chosen to exercise our discretion to address the argument on its merits. See State v. Kaczmarski , 2009 WI App 117, ¶7, 320 Wis. 2d 811, 772 N.W.2d 702.

Wells Fargo also raises a related argument that the Juzas "judicially admitted that the plaintiff-now Wells Fargo-has the ability to enforce the note" by filing "an answer [to the foreclosure complaint in 2009] in which they admitted that [BANA] owned and held the note." However, Wells Fargo does not provide any record citation showing that it developed this argument in the circuit court. Thus, and, for the same reasons we deem its claim and issue preclusion arguments forfeited, we deem this argument forfeited. See State v. Ndina , 2009 WI 21, ¶30, 315 Wis. 2d 653, 761 N.W.2d 612.