IN RE the MARRIAGE OF Patricia J. HAUGE,
Petitioner-Respondent,

v.

Paul A. HAUGE, Respondent-Appellant.

Court of Appeals

*No. 87–1486. Orally argued May 11, 1988.—Decided June 28, 1988.*

(Also reported in 427 N.W.2d 154.)

For respondent-appellant there were briefs and oral argument by *Timothy M. Doyle* and *Weisel, Thrasher, Doyle & Pelish, Ltd.,* Rice Lake.

For petitioner-respondent there was a brief and oral argument by *Gary L. Bakke* and *Bakke, Norman & Schumacher, S.C.,* New Richmond.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J.   Paul Hauge appeals a divorce judgment. He challenges the inclusion of professional goodwill and accounts receivable in the valuation of his dental practice; allocation solely to him of a large business debt; the award to Patricia Hauge of $2,500 per month family support, succeeded by an award of $1,500 per month permanent maintenance; and a requirement that he contribute $7,500 toward her attorney fees. Because the evidence is inadequate to support the debt allocation, we reverse and remand for further proceedings on that issue. Because a substantial error in property division dictates reconsideration of a support and maintenance award, we remand for review of that part of the judgment as well. The remainder of the judgment is affirmed.

The Hauges were married in 1967 shortly after they graduated from high school. Paul obtained an undergraduate degree in mortuary science and a

dental surgery degree in 1974. Paul financed his own education. He has engaged in a solo dental practice for twelve years in Centuria, Wisconsin, performing general dentistry as well as orthodontics. He testified to the tenuous nature of his present practice due to poor economic conditions in rural Polk County and the potential abolition of his right to practice orthodontics only part-time. He grosses approximately $105,000 and nets $64,000 annually. Patricia attended college until the birth of their first child in 1968. Patricia is employed part-time as a medical assistant at an area medical center earning a gross of $10,000 and a net of $8,200 per year. Paul concedes that this is presently her optimum income given her education and residence.

The parties have three children, ages eighteen, seventeen, and thirteen at the time of trial. They stipulated to joint legal custody, and the two minor children will spend approximately equal time with each parent. Other facts relevant to specific issues are incorporated hereafter as necessary.

## ALLOCATION OF DEBT

The trial court allocated a large investment debt, estimated at over $200,000, entirely to Paul, reasoning that he had exclusive control over the transactions that resulted in the losses. We conclude that control alone is an insufficient basis upon which to avoid the presumption of equality in property division found in sec. 767.255, Stats.

For a period of approximately two years, beginning during the pendency of a prior divorce action, Paul purchased Arabian horses as an investment. The venture was profitable at first, but later turned to

disaster. The horses, one costing up to a million dollars or more, were purchased through a syndicated ownership or partnership, including members of Paul's family. He relied upon his brother, a professional in the horse business, and other experts for advice. Primary financing was arranged through a Minneapolis bank controlled by Paul's family.

The first horse, purchased for $250,000, sold for a net profit of $50,000. Purchases thereafter resulted in a loss in an amount not established at trial but estimated in excess of $200,000. Paul attributed the losses to a general drop in the national economy and new tax laws eliminating certain tax shelters.

Patricia asserted that she was unaware of the original investments because they were made during an earlier separation period. She also claimed that later inquiries about details were abruptly and rudely rebuffed. Paul, on the other hand, testified that she was aware of and consulted about most of the transactions. The parties filed joint tax returns through 1984. In its memorandum opinion, the trial court relieved Patricia from sharing the debt, finding that she 'had no meaningful input as to whether the investments should be made nor how the investments should be managed. ... that [Paul] refused to furnish [Patricia] any details and ... that she had no input as to management or control ... and that she ought not to be an involuntary victim of those financially tragic investments.' The trial court also ordered Paul to make a $100,000 cash payment to Patricia in order to equalize the remaining property division.

This court, in *Anstutz v. Anstutz*, 112 Wis. 2d 10, 12, 331 N.W.2d 844, 846 (Ct. App. 1983), held that trial courts can alter an equal property division if one of

the parties has intentionally squandered or destroyed marital property. We conclude that the proof in this case falls short of the misconduct rule contemplated by *Anstutz*. In making the investments, Paul had professional assistance, and his claims that the economy and tax laws caused the failure went unchallenged. Although Patricia's counsel compares the investments to Las Vegas gambling, there is no factual basis to support that charge. Counsel relies in part upon the fact that the Hauges were flown at the seller's expense to Louisville in a Lear jet and stayed at a mansion for a New Year's Eve party in conjunction with one of the purchases. Those events involving both parties are not indicative of Paul's misconduct. It was therefore inappropriate for the trial court to allocate the entire debt to Paul solely on the basis of his control over the investments. Conversely, had the investments continued to be profitable under the same circumstances, Paul would have had no right to claim the proceeds solely as his own.

On remand, the trial court may in its discretion either hear further evidence to establish the amount of debt or, alternatively, order each party to pay an appropriate percentage. In either case, we emphasize that the court is still entitled to deviate from an equal property division upon factors consistent with sec. 767.255. In order to afford the court the broadest opportunity to invoke various options in reaching a fair property division, we remand for reconsideration the entire property division including the $100,000 cash payment ordered.

Paul also claims that the trial court may have double counted his accounts receivable, first as assets in the property division and, second, as part of his

income from which he pays family support and maintenance. Double counting of accounts receivable is error. *See Ondrasek v. Ondrasek,* 126 Wis. 2d 469, 479, 377 N.W.2d 190, 194 (Ct. App. 1985). It is undisputed that the accounts receivable were included in the value placed upon the dental practice. The record, however, fails to establish that the court included the accounts receivable as part of Paul's income. The evidence disclosed that the amount of these accounts remained relatively static or rose slightly over a period of several years preceding the divorce. The court was entitled to infer a similar accumulation into the future. Although Paul may collect a small portion of his income each year from accounts receivable, he apparently continues to accumulate a comparable receivable in each succeeding year. At the point of retirement or sale of his practice, he will be entitled to the outstanding accounts as an asset to replace those previously depleted through income.

■ Paul also asserts as error the trial court's inclusion of goodwill as an asset in his dental practice citing *Holbrook v. Holbrook,* 103 Wis. 2d 327, 309 N.W.2d 343 (Ct. App. 1981). We need not decide whether a sole dental practice is distinct from a large law firm, as in *Holbrook,* in assessing goodwill as a marital asset. Paul's own expert witness testified to the value of the goodwill, testimony that the court adopted as the basis of its decision. Having presented the evidence in his own behalf, Paul is hardly in a position to assert the acceptance of that evidence as error. This is especially true when the issue is raised for the first time on appeal. *See Wirth v. Ehly,* 93 Wis. 2d 433, 443–44, 287 N.W.2d 140, 145–46 (1980).

606

■
Paul also challenges the award of family support, maintenance, and attorney fees as an abuse of discretion. The court ordered $2,500 per month family support, reduced to $2,000 per month when the Hauges' son finishes high school in May, 1988, and to $1,500 maintenance when the youngest child is of age. It is therefore fair to infer that the court included $500 per month for each child and $1,500 for spousal support. The trial court noted, however, that under the statutory child support standards, an order of over $2,000 for two children and $1,500 for one child is suggested. Thus, even if the guidelines were halved to acknowledge joint custody, the order here was well under the statutory figure. A trial court order for unlimited or permanent maintenance can be modified later if there is an adequate change of circumstances. *See Vander Perren v. Vander Perren,* 105 Wis. 2d 219, 230, 313 N.W.2d 813, 818 (1982). While we are satisfied that the trial court properly exercised its sound discretion in awarding family support and maintenance, *see LaRocque v. LaRocque,* 139 Wis. 2d 23, 27, 406 N.W.2d 736, 737 (1987), because the issues of support, maintenance and property division are interdependent, *Ondrasek,* 126 Wis. 2d at 479, 377 N.W.2d at 194, we remand them to the trial court to allow for appropriate adjustments, if any are needed.

■
The trial court required Paul to pay $7,500 toward Patricia's attorney fees. Attorney fees are to be awarded upon a showing of need, ability to pay, and the reasonableness of the fees. *Holbrook,* 103 Wis. 2d at 343, 309 N.W.2d at 351. The trial court considered these factors in making the award, and these findings

are not clearly erroneous. Section 805.17(2), Stats. The award of fees is therefore affirmed.

*By the Court.*—Judgment affirmed in part, reversed in part, and cause remanded with directions. No costs on appeal.