IN RE the MARRIAGE OF: Jayna M. COVELLI,
Petitioner-Respondent,

v.

Todd M. COVELLI,
Respondent-Appellant.

Court of Appeals

*No. 2005AP1960. Submitted on briefs April 6, 2006.
—Decided May 3, 2006.*

2006 WI App 121

(Also reported in 718 N.W.2d 260.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Thomas W. Anderson, Jr.*, of *Anderson Law Office*, Kenosha.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Mark E. Sanders* and *Julie A. Neuhaus* of *Halling & Cayo, S.C.*, Milwaukee.

Before Brown, Nettesheim and Anderson, JJ.

¶ 1. ANDERSON, J. Todd M. Covelli appeals his judgment of divorce, challenging the trial court's property division and maintenance and child support determinations. Todd argues that the trial court's factual findings concerning the value of his used car dealership and his annual income were clearly erroneous. Todd further maintains that the trial court's erroneous valuation of his dealership was the product of a bias against him as exhibited by the court's repeated questioning of him when he was on the witness stand. Finally, Todd argues that the trial court erred in determining that he should be held responsible for any delinquent tax liabilities because he had committed marital waste by failing to satisfy those obligations.

¶ 2. We hold that the court's factual findings are supported by the evidence, in particular the testimony of his former wife, Jayna M. Covelli, and her expert. We also conclude that the trial court, functioning as a fact finder, permissibly and impartially questioned Todd in order to clarify his testimony and expedite the trial. Finally, we hold that the trial court properly determined that Todd had committed marital waste by failing to satisfy any outstanding tax debts because, in so doing, he unjustly dissipated marital assets. We affirm the judgment.

## FACTS

¶ 3. Jayna and Todd were married in 1988 and have two minor children. During the majority of their marriage, Jayna stayed at home with the children. Todd

711

operated a used car dealership, Anthony Motors, as a sole proprietor.[1] Jayna did not play a role in the operation of Anthony Motors, the processing of business records or the filing of taxes.

¶ 4. Jayna first filed a petition for divorce in November 2002. In December, Todd filed a financial disclosure statement that set his monthly income at approximately $3318 or around $40,000 annually. In April 2003, Todd filed a new financial disclosure statement that provided his monthly income was approximately $6763 or over $80,000 annually.

¶ 5. The parties later reconciled and the court dismissed the action in June 2003. Apparently at some point in August, the parties jointly filed their 2002 tax return, which reported an annual income of around $40,000.

¶ 6. In September 2003, Jayna filed the petition for divorce that forms the basis for this appeal. In October 2003, Todd filed his first financial disclosure statement in the current divorce action. He claimed his monthly income was approximately $3430 or over $40,000 annually. Todd later corrected this financial disclosure statement to reflect an annual income for 2002 of over $80,000. Todd filed a financial disclosure statement for 2003 in which he indicated that his monthly income totaled approximately $4085 or around $50,000 annually.

¶ 7. The trial court held evidentiary hearings between May and August of 2004 to settle the parties' disputes over maintenance and child support and the

---

[1] Todd also engaged in other business activities, such as a second dealership, that apparently were not in operation at the time of the divorce proceedings.

division of their property.[2] Jayna and Todd each testified during the hearings as did their respective experts, Scott Franklin and James Tirabassi.

¶ 8. Jayna testified that Todd paid the bills and handled the taxes: "It wasn't my choice. What he did on his taxes he did. He talked to the accountant. I had nothing to do with that. I didn't know anything that happened with the figures for the business and he knows that." She claimed that she had not personally signed the joint tax returns for the previous three years. She testified that Todd informed her that an individual from Illinois had approached him at the dealership and offered to purchase it for $180,000. She also commented on the lifestyle the parties led prior to their divorce, noting their memberships to a country club, the extensive list of their children's activities, her $500 per week spending allowance and their many international trips. She submitted an exhibit in which she claimed an implied annual income of $94,608.

¶ 9. Todd denied that he had been offered $180,000 for the dealership and claimed that he would sell it for $100,000. Todd confirmed that Jayna did not participate in the filing of taxes or the processing of dealership business records, but averred that Jayna had signed the 2002 tax return. Todd explained that the 2002 tax return that he filed, which claimed around $40,000 in annual income, was mistaken due to some accounting errors. He testified that the tax return prepared in April 2003 reflecting an income for 2002 of approximately $80,000 was correct and that he intended to amend his 2002 tax returns. Todd admitted

[2] The parties entered into a mediated agreement as to custody and physical placement of their two children that was later incorporated into the judgment of divorce.

that he was being audited for his failure to pay sales taxes and estimated that he owed between $4000 and $6000. The court asked Todd several questions on multiple occasions throughout his testimony.

¶ 10. Franklin, Jayna's expert, testified to the difficulties of valuing Anthony Motors due to his concerns about the reliability of the underlying financial records. He stated that he had very little confidence that the tax returns were accurate as required by tax law and referenced "mysterious adjustments in the general ledger" of the dealership. He noted that the 1999 financial records indicated an income of $71,500, but the tax return for that year reported an income of $14,300 and the 2000 financial records indicated an income of $99,000, but the tax return for that year showed an income of $32,000. When asked to consider whether the alleged $180,000 offer for the business made sense based on the financial records, he responded that it was a "reasonable number" but probably "a low end valuation." He reached this conclusion by valuing the dealership as a multiple of earnings, which he calculated to be an average of $80,000 per year based upon Todd's income over the previous four years.

¶ 11. Tirabassi testified on Todd's behalf. Tirabassi did not express an opinion as to the accuracy of the 2002 tax returns. He also did not put together a business valuation for the dealership. He testified that Franklin had engaged in "one method of assessing a value to a business," but that "there's a lot of things that go into doing a valuation of a small business." He testified that he found no discrepancies between the reported income for the year 2003, which was $54,947, and the available financial records for that year.

¶ 12. Immediately following the hearings, the trial court rejected Todd's testimony as incredible,

stating that Todd did not "forthrightly answer questions" or "direct himself to the information that's being sought." In a written judgment, the court specifically rejected as incredible Todd's testimony concerning the value of the dealership and his annual income. The court adopted Jayna's testimony concerning the offer to purchase and found the dealership to have a value of $180,000. The court further determined that if Todd owed back sales taxes from his operation of the business,

> it shall be his obligation, and it is found to have arisen from his waste of a marital asset. [Jayna] shall have no liability for such taxes if they are found to be due and owing. She had little to nothing to do with the business and [Todd's] business practices were clearly based on his decisions.

The court found that Todd's annual income was $94,608. The court commented that it was difficult to precisely determine Todd's income because of the many occasions that he gave inconsistent information about that income. The court explained that the family lifestyle could not have been enjoyed on an income of $40,000. Todd appeals.

### STANDARD OF REVIEW

¶ 13. The division of the marital estate is discretionary and we will sustain it if the trial court examined the relevant facts, applied a proper standard of law, and using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *Liddle v. Liddle*, 140 Wis. 2d 132, 136, 410 N.W.2d 196 (Ct. App. 1987). Underlying discretionary determinations may be findings of fact and conclusions of law. *State v. Holmgren*, 229 Wis. 2d 358, 366, 599 N.W.2d 876 (Ct. App. 1999). We review questions of law de novo. *Id.* We

will not overturn findings of fact unless they are clearly erroneous. *Id.*

¶ 14. When reviewing fact finding, we search the record for evidence to support findings reached by the trial court, not for evidence to support findings the trial court did not but could have reached. *Johnson v. Merta,* 95 Wis. 2d 141, 154, 289 N.W.2d 813 (1980). The weight and credibility to be given to testimony is uniquely within the province of the trial court. *Siker v. Siker,* 225 Wis. 2d 522, 528, 593 N.W.2d 830 (Ct. App. 1999). The trial court is in a far better position than an appellate court to make such determinations because the trial court has the opportunity to observe the witnesses and their demeanor on the witness stand. *Lessor v. Wangelin,* 221 Wis. 2d 659, 667–68, 586 N.W.2d 1 (Ct. App. 1998). The trial court also has a superior view of the total circumstances of the witnesses' testimony. *State v. Owens,* 148 Wis. 2d 922, 929, 436 N.W.2d 869 (1989).

¶ 15. The value of a business asset and the annual income of a party are factual determinations. *See DeLaMatter v. DeLaMatter,* 151 Wis. 2d 576, 588, 445 N.W.2d 676 (Ct. App. 1989) (income); *Rodak v. Rodak,* 150 Wis. 2d 624, 633, 442 N.W.2d 489 (Ct. App. 1989) (valuation determination a finding of fact). A trial court is not required to accept any one method of valuation over another. *Schorer v. Schorer,* 177 Wis. 2d 387, 399, 501 N.W.2d 916 (Ct. App. 1993).

## DISCUSSION

### *Valuation of the Car Dealership*

¶ 16. Todd challenges the court's finding that Anthony Motors' fair market value is $180,000. Todd

complains that the record does not contain any credible evidence supporting the court's valuation of the dealership. Todd also argues that the court's questioning of him while he was on the witness stand is evidence of a bias that led the court to punish him through its valuation of his dealership.

¶ 17. The court's finding that Anthony Motors had a value of $180,000 is supported by credible evidence in the record. Jayna testified that Todd informed her that an individual had offered to purchase the dealership for $180,000.[3] Todd complains that this was hearsay and should not have formed the basis for the court's valuation of the dealership. However, Todd did not object to her testimony as hearsay during the trial, *see Caccitolo v. State*, 69 Wis. 2d 102, 113, 230 N.W.2d 139 (1975) (failure to object results in waiver of any contest to that evidence), and the statement may be characterized as an admission by a party opponent, Wis. Stat. § 908.01(4)(b)1. (2003–04)[4] (such statements are not hearsay).

¶ 18. Furthermore, the court had before it other testimony supporting its valuation. Franklin, Jayna's expert, testified that based on his valuation of the dealership as a multiple of Todd's average earnings, $180,000 was a "reasonable number" and probably on the low end. We are not persuaded by Todd's attack on

---

[3] Todd offers a meritless and convoluted argument that because Jayna admitted that she would purchase the dealership for $100,000, this is the value she assigned to the dealership. When her statement is read in context, it is clear that Jayna concluded that if she were offered the dealership for $100,000, she would consider it to be a "bargain."

[4] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

Franklin's credibility on this point. *See Siker*, 225 Wis. 2d at 528 (trial court arbiter of witness credibility). Although Tirabassi, Todd's expert, cautioned that several factors go into the valuation of a small business, he agreed that the multiplier of earnings method of valuation Franklin used was certainly "one method of assessing a value to a business."

¶ 19. Todd offered no credible contrary evidence of the dealership's value. The court rejected Todd's testimony concerning the value of the business as incredible. We are in no position to disturb the trial court's determination that Todd, who had consistently offered inconsistent statements regarding his finances in years prior to 2003, offered testimony that was not credible. *See id.* (trial court is the ultimate arbiter of witness credibility). Todd contends that Tirabassi's testimony suggests that the dealership "was having a difficult time sustaining itself" and should be given more weight in the determination of the dealership's value. However, unlike Franklin, Tirabassi did not even conduct a valuation of the dealership or assess the financial records of the dealership from before 2003.

¶ 20. Because the trial court found Todd's testimony regarding the value of the dealership incredible and his expert did not offer a valuation method, the court was compelled to determine its value by some other means. Based on the available credible testimony from Jayna and her expert, Franklin, the trial court's determination that Anthony Motors had a value of $180,000 was not clearly erroneous.[5]

---

[5] Todd also challenges the unequal division of property. However, his complaint is premised on the trial court's valuation of the dealership. Because we conclude that the court's valuation of the dealership is not clearly erroneous, we need not address his argument concerning the property division further.

██

¶ 21. We also reject Todd's assertion that the trial court unfairly punished him through its valuation of the dealership. Todd claims that the court developed an inappropriate bias against him, as evidenced by its questioning of him, once it learned that there had been discrepancies between his reported income and financial records.

¶ 22. First, we point out that the trial court also interrupted the testimony of other witnesses, including Jayna and Franklin, with questions. Second, a trial judge's authority to interrogate a witness is not open to debate. *See* WIS. STAT. § 906.14(2). Section 906.14(2) permits the trial judge to "interrogate witnesses, whether called by the judge or by a party." Our supreme court has repeatedly stated that, while the judge may not function as a partisan or advocate when questioning a witness, the judge is "more than a mere referee" and does have a right to clarify questions and answers and to make its own inquiries to see that justice is done. *See State v. Bowie*, 92 Wis. 2d 192, 208–09, 284 N.W.2d 613 (1979) (compiling cases).

██

¶ 23. Our review of the transcript reveals that the trial court's questioning of Todd was succinct and nonjudgmental. The questions the trial court posed were designed to clarify Todd's testimony and expedite the trial and do not disclose any partiality on the part of the court. The court simply took its fact-finding role in this case extremely seriously; it used the broad latitude granted by WIS. STAT. § 906.14(2) to determine what really happened with the parties' finances. This was the court's function as fact finder. Thus, we reject Todd's suggestion that the court's questioning of him is evidence of a bias that lead the court to punish Todd

through its valuation determination. Further, we admonish Todd for his inappropriate disparaging of the trial court in his brief. *See* S.C.R. 20 Preamble (stating that while a lawyer has a duty to challenge the correctness of official action, "[a] lawyer should demonstrate respect for the legal system and for those who serve it, including judges . . . .").

### *Valuation of Todd's Income*

¶ 24. Todd next argues that the trial court's determination that his income for purposes of maintenance and child support was $94,608 was clearly erroneous. The record provides a reasonable basis for the court's finding of Todd's income.

¶ 25. The trial court rejected Todd's testimony concerning his income for want of credibility. We see no reason to disturb this determination. *Siker*, 225 Wis. 2d at 528 (credibility the province of the trial court). During the two divorce actions, Todd claimed his income was as low as around $40,000 and as high as around $80,000. Indeed, in December 2002, Todd averred that his 2002 income was around $40,000 and, only four months later in April 2003, he claimed an income of approximately $80,000. Then, in approximately August, the parties filed a tax return reporting an income of around $40,000. Furthermore, Franklin testified to the substantial discrepancies between the income reported and the financial records for the several years prior to the divorce proceedings.

¶ 26. Todd directs us to Tirabassi's testimony that his income in 2003 was $54,967 and that the company's financial records and tax information supported this

figure. The trial court, however, was not obligated to accept this figure as conclusive evidence of Todd's annual income. *See Daniel R.C. v. Waukesha County*, 181 Wis. 2d 146, 151, 160, 510 N.W.2d 746 (Ct. App. 1993) (citing maintenance and support cases to bolster conclusion that the trial court did not have to accept a party's representations of his or her income at face value). Further, the trial court reasonably concluded that Todd's incomplete disclosures on court documents, financial records and tax returns in the past made an exact determination of his annual income extremely difficult. *See Lendman v. Lendman*, 157 Wis. 2d 606, 612–13, 460 N.W.2d 781 (Ct. App. 1990) (contemplating a spouse's income over several years for purposes of maintenance award). The court, therefore, appropriately turned to the other credible evidence it had before it to establish Todd's income—namely, the exhibits and the portions of Jayna's testimony establishing the parties' lifestyle. *See Lellman v. Mott*, 204 Wis. 2d 166, 173, 554 N.W.2d 525 (Ct. App. 1996) (holding that the trial court could make its income finding based upon the available evidence when a party's intentional conduct precludes a precise determination of that annual income).

¶ 27. As the trial court stated, the parties simply could not have supported their lifestyle on an annual income of around $40,000. Jayna testified that the parties had multiple mortgage payments, had health club and country club memberships, took family vacations to places like Mexico, Jamaica, Miami and Las Vegas, dined out multiple times per week at nice restaurants, paid for expensive tennis activities for their daughter, allowed $500 per week for groceries and related items and frequently traveled to Chicago to see plays and stay the weekend. An exhibit shows that the

parties had total monthly living expenses of $7,884 or annual expenses of $94,608. Thus, the record supports the trial court's finding that $94,608 represented Todd's annual income. Therefore, Todd's challenge to the trial court's determination of his income must fail.

### Marital Waste

¶ 28. Todd's final argument is that the trial court erred in assigning him responsibility for any delinquent tax liability on the basis of marital waste. Todd contends that he did not commit marital waste because his conduct does not fall within the specific examples of waste, such as "excessive gambling or drinking" and the intentional or negligent destruction of property by "fire or accidents" that were cited in *Anstutz v. Anstutz*, 112 Wis. 2d 10, 12–13, 331 N.W.2d 844 (Ct. App. 1983). While it may be true that Todd's conduct does not fit neatly into those categories, any failure on his part to satisfy the tax obligations nonetheless falls within the definition of marital waste.

¶ 29. Although an equal division of property is presumed, WIS. STAT. § 767.255(3), the family court may deviate from an equal division after considering other factors enumerated in § 767.255(3). In particular, the court may consider each party's contribution to the marriage, § 767.255(3)(d), and, more particularly, "each party's efforts to preserve marital assets." *Anstutz*, 112 Wis. 2d at 12. The court may require a party to pay the debts arising from his or her squandering of marital assets or the intentional or neglectful destruction of property. *Id.* at 12–13. "To require a party to share in the debts created by a spouse's unjustified depletion of

marital assets would constitute a failure to consider the total contribution of each of the parties to the marital estate." *Id.* at 13.

¶ 30. Thus, *Anstutz* teaches that WIS. STAT. ch. 767 makes recompense available when one spouse has mismanaged or dissipated assets. *Haack v. Haack*, 149 Wis. 2d 243, 253–54, 440 N.W.2d 794 (Ct. App. 1989). Depending on the circumstances of the case, one spouse's failure to pay tax debts clearly can be considered the mismanagement or dissipation of assets and therefore marital waste.

¶ 31. Here, the trial court's decision to allocate any tax liabilities to Todd was based on the following facts of record. Todd admitted that he was being audited for his failure to satisfy his sales tax obligations and estimated that he owed between $4000 and $6000. Jayna did not play a role in the operation of Anthony Motors, the processing of business records or the filing of taxes. Jayna testified that she had not signed the tax returns for the previous three years and the trial court rejected as incredible Todd's testimony to the contrary. Todd exercised complete control over Anthony Motors and made the business decisions. Thus, the record showed that Jayna was not aware of the increasing tax obligations and it was Todd who chose to spend the money. Under these circumstances, we agree with the trial court that Todd, alone, mismanaged the parties' marital assets and therefore should be held responsible for any tax liability.[6]

---

[6] Todd contends that *Hauge v. Hauge*, 145 Wis. 2d 600, 427 N.W.2d 154 (Ct. App. 1988), controls this case. We cannot agree. There, we ruled that the husband's control over an unsuccessful investment involving thoroughbred horses was not sufficient to assign the resulting debt to him as a part of the property division. *Id.* at 603–05. This case, however, involves more than

## CONCLUSION

¶ 32. The trial court's factual findings regarding the value of Anthony Motors and Todd's annual income were not clearly erroneous. The court undertook a reasonable inquiry and examination of the facts and the record shows that there is a reasonable basis for each of the court's determinations. Furthermore, the court, in its role as fact finder, appropriately and without bias questioned Todd in an effort to ensure that justice obtained. Finally, the court properly held that Todd's failure to pay his tax obligations constitutes marital waste and he should be held responsible for any delinquencies.

*By the Court.*—Judgment affirmed.

just a failed business venture; it involves a culpable dissipation of marital assets. The debt arose because Todd did not ensure that the sales tax obligations were paid and instead chose to spend the money.