COURT OF APPEALS
DECISION
DATED AND FILED

April 14, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2018AP2295**

**STATE OF WISCONSIN**

Cir. Ct. No.  2017FA771

**IN COURT OF APPEALS
DISTRICT III**

IN RE THE MARRIAGE OF:

AYDIN TURK MARDAN,

   PETITIONER-APPELLANT,

 V.

INGIE MARDAN,

   RESPONDENT-RESPONDENT.

APPEAL from a judgment of the circuit court for Brown County: TAMMY JO HOCK, Judge.  *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Aydin Mardan appeals a judgment of divorce resolving all contested issues, including property division.[1] Aydin argues the circuit court erred by allowing his attorney to withdraw from representation at the beginning of the contested hearing, by ordering him to make a $64,006.50 equalization payment to his former wife, Ingie Mardan, and by ordering him to pay $2,880 of her attorney fees. We conclude all of Aydin's arguments either were forfeited, are undeveloped, or lack merit, and we affirm.

## BACKGROUND

¶2 The parties were married in Minnesota in 2008 and have one minor child. In 2011, the parties moved into a duplex in De Pere, Wisconsin, that was owned by Aydin's parents. At the inception of the final divorce hearing held on August 31, 2018, the circuit court provided the parties with approximately three hours to complete negotiations on a marital settlement agreement that would have resolved the parties' remaining disputes. Aydin refused to participate in those negotiations, and his attorney notified the court when the hearing resumed that Aydin wished for her to withdraw from the representation. After considerable discussion, the court permitted Aydin to proceed pro se, with his former attorney acting as standby counsel.

---

[1] Because the parties in this divorce action share a surname, we will refer to them by their given names for the remainder of this opinion.

We further note Aydin's brief-in-chief improperly refers to the parties by their party designations throughout the argument section. WISCONSIN STAT. RULE 809.19(1)(i) (2017-18) requires that such references be to the party's name.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶3      Much of the hearing was devoted to custody and placement disputes that are not at issue on appeal, but the parties also litigated certain property division issues.  As relevant here, Ingie proposed that Aydin be required to make an equalization payment of $64,006.50, representing one-half of the amounts the parties had spent improving the real property or had paid directly to Aydin's parents.[2]  Ingie also requested that Aydin be required to contribute to her attorney fees, given Aydin's conduct prior to and during the hearing and the fact that Aydin's firing of his attorney meant that Ingie would be responsible for preparing the judgment despite Aydin being the petitioner.

¶4      At the conclusion of the hearing, the circuit court agreed with Ingie on the equalization payment and attorney fee issues.  It concluded the payments Aydin had made directly to his parents, as well as the money the parties had spent improving the property, were "made in such a way as to be toward that house, and if they weren't toward[] the house then … it was money that would have been wasted from the marital estate."  The court also ordered Aydin to reimburse Ingie $2,880, representing 14.4 hours of her attorney's time, based upon the delay at the beginning of the hearing, the "unreasonable position" Aydin had taken in the proceedings regarding his fears about Ingie removing their child from the country, and "prep fees" Ingie had incurred the day prior to the final hearing.  Aydin now appeals.

---

[2] That amount was calculated by dividing in half the sum of the various semi-regular payments the parties had made to Aydin's parents ($23,009), a $30,005 lump-sum payment, a $60,000 lump-sum payment, $10,000 to install a fence at the residence, and $5,000 to install a new floor.  There appears to be a $1 discrepancy between the sum of these amounts and the amount Ingie proposed as representing one-half of the sum, but this is a de minimis discrepancy that does not warrant modification or reversal.

## DISCUSSION

¶5     Aydin raises three issues on appeal.  First, he seeks a new trial, arguing the circuit court should have denied his attorney's request to withdraw from his representation.  Second, Aydin argues there was insufficient evidence to support the court's decision to award the $64,006.50 equalization payment to Ingie.  Third, he challenges the court's decision to require him to contribute to Ingie's attorney fees.  We reject Aydin's arguments on each issue.

*I. Attorney Withdrawal*

¶6     Aydin asserts the circuit court should not have permitted his attorney to withdraw at the start of the divorce trial.  He bases this assertion upon his belief that the court did not conduct an adequate colloquy with him explaining the advantages of representation and the consequences of his attorney's withdrawal. He also argues there were insufficient grounds for withdrawal.  Aydin observes that he commented upon his own lack of legal acumen at the hearing, and he points out several instances in which the court commented upon the deficiencies in his pro se arguments.[3]

¶7     None of these assertions are of any moment, because the withdrawal request was not made on the attorney's own initiative.[4]  Rather, it was Aydin's idea for his attorney to withdraw, as Aydin's attorney acknowledged when making

---

[3] Based upon the transcript, it appears that at certain times Aydin did consult with standby counsel.

[4] In addition, to the extent Aydin argues he was entitled to a criminal-type waiver colloquy before his attorney was allowed to withdraw, we reject such an argument because there is no constitutional right to counsel in a civil matter. *See State v. Kraus*, 2006 WI App 43, ¶12, 289 Wis. 2d 573, 712 N.W.2d 67.

the withdrawal request. Aydin told the circuit court that he and his attorney disagreed on the objectives of the representation, with Aydin's primary objective being to obtain sole legal custody and placement of the parties' minor child so as to prevent Ingie from taking him out of the country. Aydin's attorney stated she had "multiple discussions when Mr. Mardan does not feel that we're on the same page and not proceeded in the same direction." The attorney stated Aydin had asked her "now multiple times to withdraw from the matter and allow him to handle the case on his own."

¶8 The circuit court was initially reluctant to allow withdrawal, opining that Aydin's self-representation would be a "disaster." After Aydin's attorney stated that there would likely be an Office of Lawyer Regulation complaint given Aydin's belief that she was not sufficiently advocating for his position, the court changed course and permitted Aydin to represent himself with his attorney as standby counsel. Thereafter, the court provided Aydin with repeated opportunities to change his mind and allow his attorney to represent him, including by taking a brief recess to allow Aydin to contemplate how he wished to proceed. Despite Aydin stating that he did not have the proper mindset or training to proceed pro se, he repeatedly confirmed that he wished to represent himself. Indeed, at one point in the hearing Aydin stated he was "not willing to take [his attorney's] counsel from the beginning."

¶9 Based upon Aydin's own statements, as well as his attorney's representation that the request to withdraw was Aydin's idea, we conclude the doctrine of invited error applies here. In other words, even assuming the circuit court erred in some way, Aydin is not entitled to relief under these circumstances. "Generally, where a party 'invites error' on a given issue, we will not review the issue on appeal." *State v. Freymiller*, 2007 WI App 6, ¶15, 298 Wis. 2d 333, 727

5

N.W.2d 334 (2006). The concept of "invited error" is closely related to the doctrine of judicial estoppel, which generally prohibits a party from taking inconsistent positions in the same judicial proceeding. *Id.* Accordingly, we have no basis to conclude Aydin is entitled to any relief based on the court permitting Aydin's attorney to withdraw at Aydin's request.[5]

## II. Sufficiency of the Evidence Regarding the Equalization Payment

¶10 Aydin next argues the circuit court erred by ordering him to make the $64,006.50 equalization payment. The amount of that payment was calculated by dividing in half the sum of money Aydin either had directly paid to his parents or had spent improving his parents' real property, which sum the court found had either gone "toward that house" or was "wasted from the marital estate." Aydin challenges the court's reasoning on both grounds, asserting the real property was not subject to division, the court had no authority to divide assets owned by nonparties, the payments to Aydin's parents extended beyond the one-year-look-back period established by the marital waste statute (WIS. STAT. § 767.63), and there was no evidence the money was "wasted" in any event.

¶11 A circuit court's determination as to how marital property is divided is reviewed for an erroneous exercise of discretion. *Derr v. Derr*, 2005 WI App 63, ¶9, 280 Wis. 2d 681, 696 N.W.2d 170. Under that standard, we will affirm the

---

[5] Aydin briefly suggests that the circuit court judge was biased against him and that the court impermissibly inserted itself into settlement negotiations. Although it appears Aydin views these issues as components of his argument regarding the appropriateness of allowing his attorney to withdraw, these arguments are developed for the first time in his reply brief. We do not consider arguments that are raised for the first time in an appellant's reply brief. *Commerce Bluff One Condo. Ass'n, Inc. v. Dixon*, 2011 WI App 46, ¶2 n.2, 332 Wis. 2d 357, 798 N.W.2d 264.

determination unless the court made an error of law or failed to base its decision on the facts of record. *Steinmann v. Steinmann*, 2008 WI 43, ¶20, 309 Wis. 2d 29, 749 N.W.2d 145. The question of whether property is divisible in the first instance is a question of statutory interpretation, and, therefore, one of law. *See Derr*, 280 Wis. 2d 681, ¶9. Additionally, we will not reverse the circuit court's findings of fact unless they are clearly erroneous. *Covelli v. Covelli*, 2006 WI App 121, ¶13, 293 Wis. 2d 707, 718 N.W.2d 260.

¶12 The circuit court plainly found that Aydin had enriched his parents at the expense of the marital estate, funneling approximately $128,000 to his parents "that would have otherwise been available to the parties for the purchase of a house, or whatever asset they would have wanted to [buy]." Aydin offers no basis to conclude the amount of those payments was not divisible. Contrary to Aydin's assertions, the court did not conclude the parties had an ownership interest in the residence, so Aydin's arguments regarding the statute of frauds and of the propriety of "divid[ing] the property of third parties" go nowhere.[6]

¶13 Aydin also contends the ordered equalization payment was contrary to WIS. STAT. § 767.63, which creates a rebuttable presumption that the property division is to include property that was "transferred for inadequate consideration, wasted, given away, or otherwise unaccounted for by one of the parties within one year prior to the filing of the petition or the length of the marriage, whichever is shorter." Aydin objects that there was no evidence any of the payments to his

---

[6] These arguments appear to be based on the circuit court's statement that the payments "were made in such a way as to be toward that house." This reference was likely to the improvements the parties had made to the property (i.e., adding a fence and flooring), as well as Aydin's testimony that he was making rental payments pursuant to an unwritten (and ill-defined) family agreement, and was not a conclusion that the parties "owned" any part of the real property.

parents were made within the one-year-look-back period. But the transfer of assets outside the one-year period merely affects the existence of the presumption. Under the statute, the circuit court "has the authority to treat [the relevant property] as if it still existed for purposes of property division, regardless of whether the waste occurred within one year of the filing of the divorce petition." *Derr*, 280 Wis. 2d 681, ¶65. Thus, the court did not run afoul of the statute by dividing payments Aydin had made to his parents outside the one-year time frame.

¶14 Aydin lastly argues there was no evidence "clearly establish[ing] that … [he] intentionally squandered" marital assets, or that the expenditures produced no value to the marital estate. He points to his testimony that some of the payments were to be treated as rent under an unwritten family agreement and that he paid $60,000 to his parents to reimburse them for educational loans. In Aydin's view, the payments to his parents benefitted the marriage by enhancing his earning capacity and by "having a roof over their head[s] during their marriage."

¶15 There was sufficient evidence to support the circuit court's determination that Aydin had wasted marital assets by making payments to his parents for which the parties ultimately received no benefit and by improving real property that did not belong to the couple. There was evidence that semi-regular payments were made to Aydin's parents in varying amounts. Although Aydin claimed these were rent payments, Ingie testified these payments were made with the "plan [to] … eventually buy this property from [Aydin's] parents," with the purchase price of the property being reduced by the total amount of the payments. Additionally, there was evidence the parties paid the property taxes and homeowners insurance on the property.

¶16  There was also evidence that Aydin made two substantial payments to his parents from marital assets. Aydin withdrew approximately $30,000 from the parties' bank account on October 21, 2010. Four days later, Aydin's parents took out a mortgage to purchase the residence, raising the inference that the $30,000 payment was associated with the purchase of the property. On June 2, 2015, Aydin withdrew $60,000 from his money market account and paid it to his parents, which he testified was a payment "to cover education and various other … debts that I had accrued." Ingie presented evidence that the $60,000 was in fact applied by Aydin's parents to pay off the mortgage on the duplex in August 2015, after which she believed the parties would have an ownership interest in the property that undisputedly never materialized.

¶17  In all, the circuit court's findings of fact that Aydin had diverted money to his parents and reduced the marital estate are not clearly erroneous. *See* WIS. STAT. § 805.17(2). The court was not required to accept Aydin's self-serving testimony that some of the payments to his parents were valid expenditures for rent and educational expenses. *See Covelli*, 293 Wis. 2d 707, ¶14 ("The weight and credibility to be given to testimony is uniquely within the province of the trial court.").

## III. Ingie's Attorney Fees

¶18  Aydin contends the circuit court was without authority to order him to pay a portion of Ingie's attorney fees. He argues the request for attorney fees was unsubstantiated, there was no evidence regarding the reasonableness of the fees, and the court's findings on this issue were inadequate. Aydin failed to object to the attorney fee award at any point during the court proceedings, including at

9

the time the request was made at the final hearing or after the court signed the divorce judgment.

¶19   The general rule is that issues not presented to the circuit court will not be considered for the first time on appeal. *State v. Caban*, 210 Wis. 2d 597, 604, 563 N.W.2d 501 (1997). Aydin concedes this rule of forfeiture may be appropriately applied here, but he contends we should nonetheless reach the merits of his argument for a variety of reasons—including because he did not have the assistance of the attorney he had fired during the hearing. We decline to exercise our discretionary authority to review the forfeited error in this instance.[7]

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[7] Additionally, we note that when the parties were discussing the terms of repayment, Aydin remarked that the circuit court's proposal regarding attorney fees was "reasonable and fair." Thus, the invited error doctrine could be equally applied to this appellate argument.

10