COURT OF APPEALS
DECISION
DATED AND FILED

January 27, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1143**

Cir. Ct. No. **2023FA41**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

IN RE THE MARRIAGE OF:

KELLY ANN LEWIS,

    PETITIONER-RESPONDENT,

  V.

TRAVIS MICHAEL LEWIS,

    RESPONDENT-APPELLANT.

APPEAL from a judgment of the circuit court for Bayfield County: JOHN P. ANDERSON, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. Travis Michael Lewis appeals a judgment of divorce from his former spouse, Kelly Ann Lewis.[1] Travis argues that the circuit court erred in two respects when dividing the parties' property: (1) the court erroneously concluded that Kelly had "adequately traced the identity" of vacant property that she had acquired by gift or inheritance; and (2) the court erred by awarding a dog that was acquired during the parties' marriage to Kelly. We reject these arguments and affirm.

## BACKGROUND

¶2      In 1994, prior to the parties' marriage, Kelly's parents transferred to her, as a gift, an approximately 1.85-acre vacant parcel of property in Bayfield County. The property was titled solely in Kelly's name at the time of transfer and has remained titled solely in her name at all times relevant to this appeal. Later on in 1994, Kelly purchased a manufactured home, using a mortgage loan, and placed it on the 1.85-acre parcel. At the time of the contested divorce hearing, the 1.85-acre parcel and improvements had an assessed value of $151,700.

¶3      In 1997, Kelly's parents gifted her a 43-acre parcel of vacant land adjacent to the 1.85-acre parcel. Again, the 43-acre parcel was transferred to Kelly alone and has been titled solely in her name at all times relevant to this appeal.

---

[1] Because the parties share a surname, we will refer to them by their first names throughout the remainder of this opinion.

¶4    Kelly and Travis were married in 2002, after cohabitating for several years. In 2017, Kelly's mother, as trustee of the "Kelly A. Lewis Irrevocable Trust Dated April 6, 2005," deeded to Kelly several additional parcels of unimproved land, comprising approximately 130 acres. All of those parcels were adjacent to or near the original 1.85-acre parcel that Kelly's parents had gifted to her. These additional parcels were transferred to Kelly alone and have remained titled solely in her name at all times relevant to this appeal.

¶5    Kelly filed for divorce from Travis on September 22, 2023, and a contested divorce hearing took place on March 1, 2024.[2] As relevant to this appeal, at the hearing, Kelly conceded that the 1.85-acre homestead property on which the manufactured home sat should be treated as marital property subject to division. Kelly argued, however, that the remainder of the property that she acquired from her parents by gift or inheritance should be treated as her individual property and excluded from the property division.

¶6    Conversely, Travis argued that all of the land should be included in the property division. He elicited testimony from Kelly that the parties had used the vacant land surrounding the homestead parcel for walking, cutting firewood, and riding horses. Kelly also conceded that the parties "store[d] stuff" on the vacant land, "probably 300 yards from the house." Kelly also testified that, at some point, the parties put in a driveway and cleared part of the land because they were planning to sell an unspecified portion of it. Kelly further conceded that portions of the property were logged in 2020 and 2022 and that the checks for the

---

[2] Travis represented himself at the contested divorce hearing, but he is represented by counsel on appeal.

lumber were made out to Travis. She also testified that, at some point, the parties "were trying to" put in a "gravel pit" on the property.

¶7    The other disputed issue at the contested divorce hearing, as relevant to this appeal, pertained to the ownership of a dog named Heidi that was acquired during the parties' marriage. Kelly testified that Heidi was purchased for $800 in 2020 using Kelly's "inheritance money"; that Kelly would like to be awarded Heidi; and that Kelly was willing to pay Travis $800 for Heidi. On cross-examination, Kelly clarified that Heidi was one of two dogs purchased in 2020 and that the other dog had died. She maintained that both dogs belonged to both parties, and she denied gifting one of the dogs to Travis. Travis, however, asserted that Kelly had purchased one dog for each of them; that Kelly had given Heidi to Travis; and that the dog who died was Kelly's dog.

¶8    Following the contested divorce hearing, the circuit court issued a written decision and order regarding the division of the parties' property. The court found that Kelly had acquired the 43-acre and 130-acre properties by gift or inheritance and that those properties had never been retitled in Travis's name. The court further found that, at the time of the hearing, the 43-acre parcel had an assessed value of $73,000, while the 130-acre parcels had a combined assessed value of $167,500. The court also found that Kelly had used her "inheritance" money, which was kept in a separate bank account titled in her name only, "to pay the real estate taxes on her inherited property, as well as the parties' marital residence."

¶9    The circuit court rejected Travis's assertion "that all the inherited land was given to the parties together," stating that Travis had provided "no proof of [that] assertion." The court further explained that Travis

4

made a rather odd statement that, after [Kelly] took his surname after marriage, that this somehow entitled him to half of [Kelly's] gifted or inherited property. This argument and assertion is unsupported by evidence nor is it supported with any legal authority. [Travis] did testify that some of the vacant land surrounding the marital residence was used to store personal property. There also was testimony that the parties had contemplated using some of the gifted land as a gravel and sand pit and that some years back they started the process of having the property rezoned, but the attempt ultimately failed. This was confirmed by [Kelly's] testimony. There was no evidence that the property was ever converted into some type of joint venture or other business enterprise, or that it was retitled to joint ownership.

¶10 The circuit court next addressed Travis's argument that he "maintained all of the property, including the gifted land, because walking trails were created throughout the property[,] and that somehow commingled and converted the property into a marital asset subject to division." The court explained:

> [Travis's] testimony about occupying more than the 1.85 acres with personal property implied that the marital homestead exceeded the 1.85 acres. In this regard, [Kelly] somewhat acquiesced that some of the personal property items located at or near the homestead may be outside the boundaries of the original 1.85 acres, but to an unknown extent. She also agreed additional driveways were created outside the 1.85 acres. In this regard the Court finds there is sufficient evidence to conclude the property constituting the marital residence (which [Kelly] concedes is subject to division as marital property) is larger than the 1.85 acres. However, [Travis] failed to provide much, if any, evidence as to what value should be assigned to the marital residence or how much land was actually occupied. Therefore, the Court will adopt as the best evidence the real estate tax statements and in particular Exhibit 1, which indicates the 1.85 acres of land has an assessed value, without improvements, of $8,600. Based on the evidence, the Court will estimate that the marital homestead and curtilage encompasses more tha[n] 1.85 acres and that the total curtilage of the property is perhaps three times the 1.85 acres. With that finding the Court believes the marital residence has a higher value, because it enjoys the benefit

5

of using additional land. The Court, therefore, believes the land value without improvements is really $17,200 rather than $8,600.

¶11 The circuit court then clarified that, "[i]n making this finding, the Court is not concluding that the vacant land has lost its character as separate gifted property, but rather, that the existence of the adjoining land enhances the value of the marital homestead." Because the record did not establish "the extent of the boundaries of the marital residence," the court stated that "[t]he only equitable way to handle this is to increase the value of the homestead property." The court then found that "the marital residence has a value of $168,900," rather than the assessed value of $151,700, "which incorporates the Court's belief that the use of the inherited land enhances the value of the marital home." However, the court specifically found that "[t]he real estate that was gifted or inherited, other than the marital residence, has kept its separate status and was never retitled to include" Travis's name.

¶12 The circuit court also rejected Travis's argument that "because some of the vacant land was logged several years ago by Santikko Logging and a check was written by Santikko to [Travis] for $25,000, the vacant land became a marital asset." The court cited Kelly's testimony that she was not aware the check was written to Travis alone, and it noted that "[n]o other evidence was presented on this issue." The court also stated it was "unclear" whether Travis had arranged for the logging and whether Santikko "knew or cared if the property belonged to [Kelly] alone or if it was co-owned." The court further observed that "[n]o meaningful evidence was presented regarding how or why the timber sale proceeds would change the character of the gifted land."

¶13 Applying the relevant legal principles to its factual findings, the circuit court then concluded that Kelly's gifted and inherited property surrounding the homestead remained Kelly's individual property and would not be included in the property division. The court stated it was "relatively easy to trace the properties in question to an indivisible asset" because "[a]ll the land gifted to [Kelly] has remained in her name alone and has not been retitled to include [Travis's] name." Addressing the property's character, the court stated that none of Kelly's actions "showed a donative intent to convert … the unimproved land to property subject to division."

¶14 Next, the circuit court noted that "[n]either party seriously argues that the marital estate subject to division should not be divided equally," but that the parties did disagree as to "[w]ho should be awarded the marital home." The court observed that "[w]hoever is awarded the marital home will have to pay the other party a significant sum of money to equalize the property division," and while Kelly had "the ability to obtain money from her trust to buy out [Travis]," there was no evidence that Travis would be able to make an equalization payment to Kelly. The court also noted that the home was surrounded by Kelly's individual property and that it did not appear the parties would be able to "coexist as adjoining landowners," given that they had reciprocal restraining orders against each other. The court further stated that Kelly had invested "far more" into the marital residence than Travis and that the property was "generationally tied to" Kelly's family. Given these considerations, the court concluded that the equities favored awarding the marital residence to Kelly.

¶15 Finally, with respect to the ownership of the dog, the circuit court found that Kelly had acquired two dogs with her inherited money, but one of the dogs had died. The court then concluded that the surviving dog, Heidi, "is at the

marital home and will be awarded to the party who will be awarded the marital home"—i.e., Kelly. The court noted that Kelly had agreed to pay Travis $800 for Heidi, and it ordered Kelly to pay Travis that amount, in addition to the equalization payment that she was required to make under the property division.

¶16 The circuit court ultimately entered a final judgment of divorce on April 29, 2024. Travis now appeals from that judgment.[3]

## DISCUSSION

¶17 The division of property at divorce is entrusted to the circuit court's discretion and will not be disturbed on appeal absent an erroneous exercise of discretion. *LeMere v. LeMere*, 2003 WI 67, ¶13, 262 Wis. 2d 426, 663 N.W.2d 789. We will uphold a discretionary decision as long as the court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Id.* (citation

---

[3] After filing his notice of appeal, Travis filed a motion for reconsideration in the circuit court. The court denied that motion on July 12, 2024. Travis has not filed a notice of appeal from the July 12 order. As such, that order is not before us in this appeal, and we will not address it further.

We also pause to note two deficiencies in Travis's appellate briefs. First, the briefs do not comply with WIS. STAT. RULE 809.19(8)(bm) (2023-24), which requires a brief to "have page numbers centered in the bottom margin using Arabic numerals with sequential numbering starting at '1' on the cover." Our supreme court has explained that this pagination requirement "will match the page number to the page header applied by the eFiling system, avoiding the confusion of having two different page numbers." S. CT. ORDER 20-07, 2021 WI 37, 397 Wis. 2d xiii (eff. July 1, 2021).

Second, throughout his appellate briefs, Travis repeatedly refers to the parties by party designation, rather than by name, in violation of WIS. STAT. RULE 809.19(1)(i) (2023-24).

We admonish Travis's counsel that future violations of the Rules of Appellate Procedure may result in sanctions. *See* WIS. STAT. RULE 809.83(2) (2023-24).

All references to the Wisconsin Statutes are to the 2023-24 version.

omitted). Our review of a discretionary decision may involve underlying questions of law and fact. ***Covelli v. Covelli***, 2006 WI App 121, ¶13, 293 Wis. 2d 707, 718 N.W.2d 260. We review any questions of law independently, but we will not disturb the circuit court's factual findings unless they are clearly erroneous. ***Id.***

## I. Kelly's gifted or inherited property

¶18    "The general rule is that assets and debts acquired by either party before or during the marriage are divisible upon divorce." ***Derr v. Derr***, 2005 WI App 63, ¶10, 280 Wis. 2d 681, 696 N.W.2d 170. However, property acquired by gift or by reason of the death of another—i.e., by inheritance—is generally not subject to division. *See* WIS. STAT. § 767.61(2)(a).[4] Determining whether property is subject to division is a mixed question of fact and law. *See **Derr***, 280 Wis. 2d 681, ¶45.

¶19    "When a party to a divorce asserts that property, or some part of the value of property, is not subject to division, that party has the burden of showing that the property is non-divisible at the time of the divorce." ***Id.***, ¶11. To do so, that party must establish: "(1) the original gifted or inherited status of the property; and (2) that the character and identity of the property [have] been preserved." ***Wright v. Wright***, 2008 WI App 21, ¶12, 307 Wis. 2d 156, 747 N.W.2d 690 (2007). "Once the recipient of [gifted or] inherited property has met these requirements, the opposing party has the opportunity to establish by sufficient

---

[4] Property acquired by gift or inheritance may be divided at divorce "if the court finds that refusal to divide the property will create a hardship on the other party or on the children of the marriage." WIS. STAT. § 767.61(2)(b). The circuit court in this case made no such finding, and Travis does not argue that § 767.61(2)(b) is applicable here.

countervailing evidence the property is not [gifted or] inherited, or has otherwise lost its exempt status because its character or identity has not been preserved." *Krejci v. Krejci*, 2003 WI App 160, ¶32, 266 Wis. 2d 284, 667 N.W.2d 780.

¶20     In this case, it is undisputed that Kelly acquired the property in question—that is, the vacant parcels surrounding the parties' homestead—by gift or inheritance.  We therefore proceed to the second step of the analysis and consider whether the parcels' character and identity have been preserved.

¶21     On appeal, Travis argues that the circuit court "failed in the identity portion of the analysis."[5]  "Identity," which is also called "tracing," "addresses whether the gifted or inherited asset has been preserved in some present identifiable form so that it can be meaningfully valued and assigned."  *Derr*, 280 Wis. 2d 681, ¶15 (citation omitted).

¶22     At the contested divorce hearing, Kelly submitted deeds that clearly identified the relevant parcels and showed that they had been transferred to her and were titled solely in her name.  As such, the parcels have been preserved in a present, identifiable form.  Furthermore, the evidence showed that the 43-acre parcel had an assessed value of $73,000 at the time of the contested divorce hearing, while the 130-acre parcels had a combined assessed value of $167,500.  Thus, the parcels were capable of being meaningfully valued and assigned.

---

[5] Travis does not develop any argument on appeal regarding the property's "character"—i.e., whether Kelly intended to donate the parcels in question to the marriage. *See Derr v. Derr*, 2005 WI App 63, ¶23, 280 Wis. 2d 681, 696 N.W.2d 170. "[W]e will not abandon our neutrality to develop arguments" for a party. *Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82. We therefore limit our analysis to the property's identity and do not further address its character.

Consequently, the circuit court properly determined that the parcels' identity had been preserved.

¶23 In arguing to the contrary, Travis asserts that the parcels' identity was not preserved because "the parties did not use the properties as seven separate parcels." However, Travis cites no legal authority in support of the proposition that the parties' use of the parcels affected the parcels' identity. We need not consider arguments that are unsupported by citations to legal authority. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶24 Travis also asserts that the "boundary lines were uncertain, and the use of the homestead property extended [onto the vacant land] to some unknown amount." This argument is unpersuasive because Travis does not explain why the so-called "extension" of the homestead onto the vacant parcels prevented those parcels from being either identified or meaningfully valued and assigned. Travis emphasizes that the circuit court assigned an increased value to the homestead based on the parties' use of the vacant parcels. That determination, however, does not demonstrate that the *identity* of the vacant parcels had changed. Rather, the court determined, in equity, that when valuing the homestead, it was appropriate to assign an increased value to the land based on the parties' ability to use the neighboring parcels during their marriage.[6] That determination regarding the value of the homestead does not compel a conclusion that the surrounding, vacant parcels could not be identified or meaningfully valued and assigned at the time of divorce.

---

[6] On appeal, neither party argues that the circuit court erred in its valuation of the homestead.

11

¶25    Travis next asserts that the parties "planned to sell their property" at some unspecified point in time, but "the extent of what they intended to sell is not clear on the record." Travis fails to explain the relevance of this fact. It is undisputed that no sale of any portion of the property took place during the parties' marriage. Thus, the identity of the gifted or inherited parcels remained unchanged. The fact that the parties may have contemplated selling an unspecified portion of the property at some point in time is immaterial.

¶26    Travis also argues that the circuit court improperly shifted the burden of proof to him to show a change in the identity of the gifted or inherited parcels. As set forth above, Kelly had the initial burden to show that the property's identity had been preserved. *See **Wright***, 307 Wis. 2d 156, ¶12. Once she did so, however, it became Travis's burden "to establish by sufficient countervailing evidence" that the property's "identity ha[d] not been preserved." *See **Krejci***, 266 Wis. 2d 284, ¶32. The record shows that Kelly met her burden, and Travis failed to present the requisite countervailing evidence. Accordingly, the court did not err by determining that the gifted or inherited parcels remained Kelly's individual property and would not be included in the property division.

## II. Heidi

¶27    Travis next argues that the circuit court erred in its treatment of the dog, Heidi, that was acquired during the parties' marriage. Travis contends that Heidi "legally would be considered separate property because she was purchased with [Kelly's] inherited property." Thus, according to Travis, "the court needed to consider whether [Heidi's] identity was properly traced" and "whether Heidi's character remained a gift."

¶28    This argument ignores the basis for the circuit court's ruling. The court did not award Heidi to Kelly because Heidi had been purchased using Kelly's inherited funds. Instead, the court determined that Heidi lived at the marital home and that, as a result, it was appropriate to award Heidi to the party who received the marital home. The court then awarded the marital home to Kelly because: (1) Kelly had the ability to make an equalization payment to Travis; (2) the home was surrounded by Kelly's individual property, and it was unlikely the parties would be able to coexist as neighboring landowners; (3) Kelly had invested "far more" than Travis into the marital residence; and (4) the homestead property was "generationally tied to" Kelly's family.

¶29    Travis does not develop any argument on appeal that the circuit court erred by awarding the marital home to Kelly. Nor does Travis explain why it was an erroneous exercise of discretion to award Heidi to the party who received the marital home, given that Heidi resided at the marital home. On its face, that ruling does not appear to be an erroneous exercise of the court's discretion. We therefore reject Travis's argument that the court erred by awarding Heidi to Kelly.

¶30    In his reply brief, Travis argues for the first time that he "was never provided an opportunity to say how he might care for the dog" and that the circuit court erroneously exercised its discretion by "assigning an arbitrary value without testimony to the dog." We need not address these arguments because they were raised for the first time in a reply brief. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998).

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

13